[No. 6906-3-I. Division One. May 27, 1980.]

THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL WARD HALE, *Appellant*.

*Lewis H. Nomura* of *Seattle–King County Public Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *James A. Trujillo, Deputy,* for respondent.

ANDERSEN, J.—

## FACTS OF CASE

The defendant, Michael Ward Hale, appeals from convictions of four counts of kidnapping in the first degree, and one count each of rape in the first degree, robbery in the first degree and theft in the second degree. He was also found by the jury to have been armed with a deadly weapon while committing the crimes of kidnapping, rape

and robbery. The defendant here appeals from the judgment and sentences entered.

It is not contended that the crimes were not committed. The only factual issue at the trial was whether or not it was the defendant who committed them. The jury found that he had.

The crimes occurred at a home belonging to Richard C. Balch, better known as Dick Balch, a Seattle area automobile dealer. The house was being remodeled at the time and Mr. Balch was temporarily residing elsewhere.

Five young women were at the house at the time. Two were high school girls doing cleaning work, one was Mr. Balch's secretary and the other two had just stopped by.

The man who committed the crimes arrived at the house, said he had come to do some work and was admitted. In due course, he produced a submachine gun, handcuffed the occupants and during a 4 1/2 hour reign of terror committed the seven felonies of which the defendant was found guilty.

The intruder had one of the victims phone Mr. Balch to come to the house. When Balch arrived, he, in turn, was made to call one of his employees. Balch was forced to have the employee pick up an envelope from Balch's temporary residence, which envelope contained money and cocaine, and then have the envelope delivered to him at the house. When the money and cocaine arrived, the defendant took it and fled in a car belonging to one of the women.

The intruder wore a mask part of the time he was at the house. Four of the young women, each of whom saw the intruder without a mask for a time, positively identified him as the defendant Hale. They first identified Hale's photo from a photo montage and then identified him in person at the trial. Their testimony was detailed and consistent. The fifth young woman victim had only a brief glance at the man and was not able to identify him.

Mr. Balch did not see the intruder unmasked. He testified, however, that Hale was a friend of his, had lived with him for a time and had supplied him with cocaine. Balch

also testified that he was familiar with Hale's voice, mannerisms and speech and, based on this and what he observed, was certain that the masked intruder was the defendant Hale.

At trial, the defendant testified he had not committed the crimes and was elsewhere at the time. Other defense witnesses also testified in support of the defendant's alibi defense.

Two principal issues are presented by this appeal.

## ISSUES

ISSUE ONE. Was the defendant prejudiced by remarks made by the deputy prosecuting attorney in closing argument?

ISSUE TWO. In sentencing the defendant for the crimes of robbery in the first degree and rape in the first degree, did the trial court err in enhancing the penalties pursuant to RCW 9.41.025 based on those offenses having been committed while the defendant was armed with a deadly weapon?

## DECISION

ISSUE ONE.

CONCLUSION. The trial court did not err when it denied the defendant's motion for a new trial based on a claim of prejudicial misconduct in closing argument.

The deputy prosecutor in his final argument reviewed the testimony of the State's witnesses on the one hand and of the defendant and his witnesses on the other. During the course of his argument, the deputy prosecutor three times referred to the defendant and his witnesses as "liars" and twice indicated that he personally believed that. These instances are set forth in the margin.[1] Then twice in discussing the means by which the crimes were committed and

---

[1][MR. TRUJILLO:] So, either you are going to believe Mr. Balch, what he told you or you are going to believe the other four witnesses who were present there and described to Mr. Hale, described the clothes he was wearing, described the machine gun that he had, described what he told them, described his actions; or you are going to believe Michael Hale and his witnesses.

the way in which the prosecution claimed the alibi defense was established by the defendant, the deputy prosecutor referred to the defendant as having been convicted of drug charges and being involved in drug trafficking. It is the defendant's contention that this constituted prejudice justifying a new trial.

In *State v. Torres,* 16 Wn. App. 254, 264, 554 P.2d 1069 (1976), a case relied on by the defendant, we recently reviewed the law relative to prosecutorial misconduct and observed that "[t]he decision to grant or deny a new trial based upon allegations of prosecutorial misconduct depends upon the facts of each case and rests within the sound discretion of the trial judge."

The degree of impropriety of the challenged portions of the deputy prosecutor's argument in this case is not comparable with the prejudicial and unfair arguments in *State v. Torres, supra,* that we held required reversal. Here the

---

Ladies and gentlemen, I'm going to tell you right now that that man sitting there, Michael Hale, is a liar; and I can't tell you how strongly I feel about that—

Ms. Wyatt: Objection, your Honor. His own feelings—

Mr. Trujillo: Because the evidence has shown that.

The Court: Sustained. The prosecutor won't give his own personal views, please.

Mr. Trujillo: The evidence without a doubt in this case, ladies and gentlemen, has shown that Michael Hale was there, that he was in fact the person who committed these crimes.

\* \* \*

[Mr. Trujillo:] Ladies and gentlemen, after consideration of all this evidence, you are going to have to tell someone, "I think you are a liar," and it's not an easy thing to do because no one likes to believe that someone would actually under oath take the stand and have 12 people staring at them and take the stand and sit there and lie.

I am going to suggest to you that is exactly what happened.

Suggest to you that Gilbert Morales, Nicholas Esparza, Erin Egan, Dennis Hofferber, Michael Hale lied to you when they took the stand.

\* \* \*

[Mr. Trujillo:] There are a few things that I just want to briefly go over and I think that they're important.

I told you before I think Michael Hale is a liar.

Ms. Wyatt: Objection, your Honor. There is no foundation or evidence—

The Court: Yes. Let's not get into what you think. Talk about the evidence.

Mr. Trujillo: You have heard the evidence . . .

trial judge who presided over the trial and was in a position to view firsthand the effects of the prosecutor's argument, also considered the claims of misconduct in argument in connection with defendant's post–trial motions. The trial court denied defendant's motion for a new trial stating, "I think Mr. Hale had a fair trial." We agree.

Of the five present claims of misconduct, only two were objected to at the trial and both objections were promptly sustained by the trial court. See footnote 1. No motion was made that the jury be instructed to disregard any of this argument or for a mistrial. This strongly suggests that the argument in context did not at the time appear to trial defense counsel to be harmful to the defendant, *State v. Walton*, 5 Wn. App. 150, 152, 486 P.2d 1118 (1971), and bears out that the trial court appropriately exercised its discretion when it denied a new trial.

■ We have carefully reviewed the deputy prosecutor's argument in view of the evidence presented and conclude here, as the State Supreme Court concluded in a case involving similar contentions, that "[a]lthough the prosecutor's closing argument might have been better phrased by not using the word 'liar', we believe that his argument comes within the rule which allows counsel to draw and express reasonable inferences from the evidence produced at trial." *State v. Adams*, 76 Wn.2d 650, 660, 458 P.2d 558 (1969). *Accord, State v. Luoma*, 88 Wn.2d 28, 40, 558 P.2d 756 (1977); *State v. Jefferson*, 11 Wn. App. 566, 568–69, 524 P.2d 248 (1974).

■ Furthermore, the jury was instructed in the language of WPIC 1.02, 11 Wash. Prac. 6 (1977), that argument of counsel not supported by evidence was to be disregarded. Instruction No. 2 (part). The jury is presumed to have followed that instruction.

■ With reference to the argument mentioning the defendant's prior convictions, the jury is presumed to have followed the trial court's instruction that the defendant's prior convictions could only be considered in connection with the weight or credibility of his testimony. Instruction

No. 7. The further reference in argument to the defendant's familiarity with drug trafficking was not improper since testimony concerning that was admitted without objection at the trial.

ISSUE TWO.

CONCLUSION. It is now the settled law of this state that the penalties for the crimes of robbery in the first degree and rape in the first degree cannot be enhanced under the statute which provides enhanced penalties for those who commit crimes while armed.

■ RCW 9.41.025(1) is an enhanced penalty provision of the uniform firearms act. *State v. Workman,* 90 Wn.2d 443, 453, 584 P.2d 382 (1978). In *Workman,* the State Supreme Court held that this section does not apply to robbery in the first degree since being armed with a deadly weapon is already an element of the offense of robbery in the first degree, and that to further enhance that penalty by the enhanced penalty provisions of this section would in effect be doubling up the enhancement of penalties for being armed with a deadly weapon. *State v. Workman, supra* at 454. This same principle has been held applicable to the crime of rape in the first degree where, as here, it is charged and proved that the offender used or threatened to use a deadly weapon. RCW 9.79.170(1)(a);[2] *State v. Gross,* 23 Wn. App. 319, 325–27, 597 P.2d 894 (1979). These principles are retroactive, *In re Carle,* 93 Wn.2d 31, 604 P.2d 1293 (1980), therefore, the sentence for the crimes of robbery in the first degree and rape in the first degree must be corrected.

The defendant's remaining contentions do not merit extensive discussion.

■ The jury was told that if it found the defendant guilty, it was to return a special verdict as to whether or not the defendant was armed with a deadly weapon and/or

---

[2]The current first–degree rape statute, enacted subsequent to this offense, retains this same language. RCW 9A.44.040(1)(a).

a firearm at the time six of the seven offenses were committed. The jury did so, finding that the defendant was armed with a deadly weapon and a firearm. The defendant now urges that the trial court erred in not instructing the jury that it had a duty to so find "beyond a reasonable doubt." That issue was not raised in the trial court and the defendant proposed no instructions concerning it. The references to "deadly weapon" and "firearm" in this context did not relate to an element of any of the offenses of which the defendant was convicted, *State v. Boyer,* 4 Wn. App. 73, 78, 480 P.2d 257 (1971), therefore the matter does not involve a constitutional right. Thus the issue cannot be raised for the first time on appeal. *State v. Robinson,* 78 Wn.2d 479, 481, 475 P.2d 560 (1970); *State v. Louie,* 68 Wn.2d 304, 312, 413 P.2d 7 (1966), *cert. denied,* 386 U.S. 1042, 18 L. Ed. 2d 610, 87 S. Ct. 1501 (1967). Furthermore, it was uncontroverted at trial that the man who committed the crimes did so while armed with a submachine gun. Under the court's instructions to the jury in this case, a submachine gun is both a deadly weapon and a firearm so there could be no error in any event. Instruction No. 24.

By instruction No. 26, the jury was told that to hold the defendant guilty of rape in the first degree, it must find that "the defendant used or threatened to use a deadly weapon; *or* kidnapped [the victim]; *or feloniously entered into the building* where [the victim] was situated; . . ." (Italics ours.) Instruction No. 21 was to the same effect. The defendant now argues that since the information charging the crime did not allege felonious entry, the two instructions using that term were constitutionally infirm. This issue has not previously been raised either. Neither was objection taken to these instructions on this ground or any instruction proposed by the defendant explaining what he now argues to be the correct statement of the law.

Here the felonious entry element was only one of three *alternate* means of committing one element of the crime of rape in the first degree. Since there was no evidence of any

felonious entry whatsoever, and since there was uncontroverted evidence of the other two alternatives, threatened use of a deadly weapon and kidnapping, the complained-of error was no more than harmless surplusage. *State v. Martin,* 73 Wn.2d 616, 627–28, 440 P.2d 429 (1968); *State v. Johnson,* 1 Wn. App. 553, 555–57, 463 P.2d 205 (1969).

The defendant's convictions are affirmed. The references to the defendant being armed with a firearm and to RCW 9.41.025 in the judgment and sentence are hereby deleted[3] and the clerk of this court is instructed to so notify the Board of Prison Terms and Paroles.

SWANSON and DORE, JJ., concur.

Reconsideration denied June 27, 1980.

Review by Supreme Court pending June 10, 1981.

---

[3]*See State v. Scott,* 93 Wn.2d 7, 17, 604 P.2d 943 (1980) which supports our view that in this situation, the correction of the judgment and sentence, in the defendant's favor, does not require the defendant to be personally returned to the Superior Court for a formal resentencing.