[Nos. 48448–1, 48601–8,    Department Two.    October 20, 1983.]
48633–6, 48791–0.

THE STATE OF WASHINGTON, *Respondent,* v. DAVID
EDWARD WARRINER, *Petitioner.*

THE STATE OF WASHINGTON, *Respondent,* v. ALLEN
HARRIS, JR., *Petitioner.*

THE STATE OF WASHINGTON, *Respondent,* v. SAMUEL
JAMES, *Petitioner.*

THE STATE OF WASHINGTON, *Respondent,* v. CHARLES
LEE DICKERSON, *Petitioner.*

*John G. Ziegler,* for petitioners Warriner and James.

*Stephanie M. Searing* of *Eastside Defender Association,* for petitioners Harris and Dickerson.

*Norm Maleng, Prosecuting Attorney,* and *Charles S. Hamilton III, James A. Trujillo, Lee D. Yates,* and *William Downing, Deputies,* for respondent.

PER CURIAM.—Each of the petitioners in these cases has been found to be a habitual criminal, pursuant to RCW 9.92.090. In each case, the habitual criminal finding is based upon one or more prior felony convictions obtained by way of guilty pleas. The primary issue in each case is whether the State has met its burden, under *State v. Holsworth,* 93 Wn.2d 148, 607 P.2d 845 (1980), of proving the validity of the prior guilty pleas. The petitioner in each case contends that the State failed to meet this burden because the State did not show that each prior plea was entered after knowing waiver of the petitioner's right to remain silent. In separate decisions, Division One of the Court of Appeals affirmed the habitual criminal findings and sentences, holding the prior guilty pleas to be "voluntary." We deferred consideration of the petitions for review of these decisions pending *State v. Chervenell,* 99 Wn.2d 309, 662 P.2d 836 (1983). On August 12, 1983, we granted all four petitions for review. We now reverse the Court of Appeals decisions, vacate the habitual criminal findings, and remand the causes for resentencing.

In *Holsworth,* we held that the State has the burden of proving beyond a reasonable doubt the constitutional validity of any prior guilty plea based conviction it relies upon to prove the habitual criminal status. We also held that in order to meet this burden, the State must prove that the defendant "knowingly and voluntarily entered his

plea and waived his constitutional rights to confront his accusers and to jury trial and against self–incrimination." *State v. Holsworth, supra* at 153; *see also Boykin v. Alabama,* 395 U.S. 238, 243, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969). Critical to the cases presently before the court is our conclusion in *Chervenell* that in order to meet this burden, the "State must show, by extrinsic evidence if need be, that the defendant . . . was aware of his right . . . to remain silent . . ." *State v. Chervenell, supra* at 314. Only by showing this awareness can the State prove that the defendant's decision to forego his rights was "knowing." *Chervenell,* at 312.

In *Chervenell* we discussed several ways in which the State can seek to prove that the defendant was aware of his right to remain silent. The best evidence is that the defendant was expressly advised of this right, either orally by the trial judge at the plea hearing, or by reading a plea form explaining the right. *Chervenell,* at 315. The defendant's prior trial experience, "especially prior exercise of his right not to testify", is also highly probative. *Chervenell,* at 316. Further, the defendant's prior attorney can provide evidence of the defendant's awareness of his rights. *Chervenell,* at 316.

A review of the present cases individually shows that the State's evidence in each case fails to satisfy the standards set forth in *Holsworth* and *Chervenell.* The State therefore cannot rely on the petitioners' prior guilty plea based convictions to establish their status as habitual criminals, and the habitual criminal findings must be vacated. *State v. Chervenell, supra* at 312.

Warriner. David Warriner's habitual criminal status rests upon his present convictions for assault and negligent homicide and his two prior convictions for burglary. Each burglary conviction is based upon a guilty plea. Neither of Warriner's written guilty plea statements refers to the right to remain silent. Also, the transcripts of the plea hearings reveal that neither trial judge advised Warriner that by pleading guilty he would be waiving his right to remain

silent. Warriner testified at his habitual criminal trial that he thought, when he entered his first plea, that the State could compel a defendant to testify. Warriner also testified that when he entered his second plea, he thought that claiming the privilege against self–incrimination would be the same as pleading guilty. Neither of Warriner's former attorneys could remember whether he had advised Warriner of his right to remain silent. One of these attorneys expressed doubts as to whether Warriner had fully understood the proceedings. This evidence clearly does not satisfy the State's burden of proving Warriner's awareness of his right to remain silent.

Harris. The State relied on four prior convictions to prove Allen Harris' status as a habitual criminal. Each conviction is based upon a guilty plea. As in Warriner's case, none of the plea forms refers to the right to remain silent, nor did any of the trial judges at any of the plea hearings advise Harris of this right. The State did not present any extrinsic evidence which might show that Harris became aware of his right to remain silent in some other manner. The State therefore cannot rely on the convictions resulting from these pleas to prove the habitual criminal status.

James. Samuel James has two prior guilty plea based convictions, each for taking a motor vehicle without permission. The State in his case also chose to rely solely on court documents to prove the validity of these pleas. However, because the plea forms do not refer to the right to remain silent, and the plea judges did not advise James of this right, the State cannot rely on James' two guilty plea based convictions to prove that he is a habitual criminal.

Dickerson. Charles Lee Dickerson has only one prior conviction based on a guilty plea. Dickerson pleaded guilty to possessing heroin in 1975. Dickerson's second prior conviction, also for possessing heroin, rests on a 1973 jury verdict. As with the pleas in the three cases discussed above, the 1975 plea form in Dickerson's case does not refer to the right to remain silent. Also, the trial judge at the plea hearing did not advise Dickerson of this right.

Unlike the other petitioners, Dickerson had prior trial experience when he entered his guilty plea in 1975. Although we mentioned prior trial experience in *Chervenell* as relevant evidence of a defendant's awareness of his right to remain silent, we do not find Dickerson's 1973 trial experience to be sufficient to prove that he knowingly waived his privilege against self–incrimination in 1975. We stated in *Chervenell* at page 316 that a "prior exercise of [the] right not to testify . . . would also be highly probative" of awareness of the right to remain silent. Dickerson testified at his 1973 trial. Therefore, without some evidence that he was aware in 1973 that he could choose not to testify, his trial experience does not demonstrate that he was ever aware of that right. The State therefore cannot use his 1975 guilty plea based conviction to prove his status as a habitual criminal.

Two of the petitioners raise other issues. These do not merit lengthy discussion. James contends that the State's failure to prove that he was aware of his right to remain silent when he entered his guilty pleas, by itself, renders the convictions flowing from those pleas inadmissible for impeachment purposes. We rejected a similar contention in *State v. Holland,* 98 Wn.2d 507, 520, 656 P.2d 1056 (1983) (defendant may not challenge the impeachment use of prior statements on the ground that they were made following an invalid waiver of the privilege against self–incrimination). Warriner's contention that the firearm and deadly weapon sentencing statutes cannot be applied to his convictions for assault and negligent homicide is similarly without merit. *See State v. Adlington–Kelly,* 95 Wn.2d 917, 631 P.2d 954 (1981).

The Court of Appeals decisions are reversed, the habitual criminal findings are vacated, and the causes are remanded to the trial courts for resentencing.