[Nos. 11575–8–I; 11578–2–I. Division One. March 5, 1984.]

THE STATE OF WASHINGTON, *Respondent,* v. RONNIE EUGENE BOWMAN, *Appellant.*

*Julie Kesler* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney, Deanna Jennings Fuller, Deputy,* and *Donna Fisher, Legal Intern,* for respondent.

SWANSON, J.—Ronnie Eugene Bowman, a/k/a Ronald Eugene Jackson, a/k/a Sammie Jackson (Bowman), appeals his convictions of multiple criminal offenses of rape, burglary, robbery, kidnapping, theft, negligent homicide, felony flight, as well as his sentences rendered pursuant to deadly weapon, firearm, and habitual criminal findings. His convictions and sentences result from charges filed in two separate causes consolidated for this appeal.

In the first cause hereinafter referred to as the "negligent homicide case" Bowman was convicted of attempting to elude a pursuing police officer contrary to RCW 46.61.024 ("felony flight") and negligent homicide after a jury trial on July 1, 1981.[1]

The second cause involves a 13–count amended information hereinafter referred to as the "rape cases."[2] The "rape

---

[1] In the first cause, filed on March 16, 1981 under King County Superior Court cause 81–1–00945–6, and subsequently assigned Court of Appeals number 11578–2–I, Bowman was charged with negligent homicide and attempting to elude a pursuing police officer.

[2] In the second cause (the "rape cases"), Bowman was charged by amended information filed June 8, 1981 under King County cause 81–1–01434–4 and subsequently assigned Court of Appeals number 11575–8–I. Both causes were consolidated for appeal under 11575–8–I. The amended 13–count information charged Bowman with the following crimes: Count 1: Burglary first degree; Count 2: Rape first degree; Count 3: Robbery first degree; Count 4: Robbery first degree; Count 5: Theft first degree, all while armed with a deadly weapon/firearm; Count 6: Burglary first degree; Count 7: Robbery first degree, both while armed with what appeared to be a firearm/deadly weapon; Count 8: Rape first degree, Lander Hall parking garage; Count 9: Robbery first degree, Lander Hall parking garage; Count 10: Theft first degree, Lander Hall parking garage, all while armed with a deadly weapon/firearm; Count 11: Rape first degree, Bon Marche parking garage; Count

cases" stem from three separate incidents of alleged first degree rape and other criminal offenses which were severed for trial and heard by three separate juries.[3]

The trial of the first of the "rape cases," the alleged rape of a Seattle housewife, hereinafter referred to as Mrs. G., counts 1 through 5, resulted in a June 17, 1981 guilty verdict, and special verdict deadly weapon and firearm findings, as to all five counts.

The second jury trial heard on June 18, 1981 involved counts 6 and 7, burglary and robbery charges, and resulted in a not guilty verdict.

The third jury trial, including counts 8 through 13, involved two separate rape incidents wherein a university student and a Seattle career woman, hereafter referred to as Ms. H. and Mrs. R. respectively, were the victims. The jury returned a guilty verdict on June 29, 1981 on all counts and by special verdict found that the defendant had been armed with a deadly weapon during the commission of each of the crimes charged and specifically with a firearm on counts 8 through 10.

After the verdicts were rendered in the three prior trials, the State filed a supplemental information under the "rape cases" cause number alleging Bowman to be a habitual offender. Based upon three prior guilty pleas, the jury returned with a habitual criminal finding.

Thereafter, judgment and sentence was entered in each cause on March 23, 1982 and this appeal followed. We

---

12: Kidnapping first degree, Bon Marche parking garage; Count 13: Robbery first degree, Bon Marche parking garage, all while armed with a deadly weapon.

[3]Defendant's pretrial motion to sever the trial of the "rape cases" into four separate trials was granted, but the judge specifically reserved jurisdiction over the issue of rejoinder pending an evidentiary ruling by the trial court as to the admissibility of evidence associated with one rape charge in the trial of a second rape charge. The trial court subsequently ruled that the evidence associated with the rape of Mrs. R. (counts 11, 12, and 13) would be admissible in the trial involving the rape of Ms. H. (counts 8, 9, and 10), and vice versa. Based on this evidentiary ruling, these two trials were rejoined and counts 8 through 13 were tried together.

affirm in part and reverse in part.

## I
### NEGLIGENT HOMICIDE AND "FELONY FLIGHT" CASE

Bowman contends that the judgment and sentence for attempting to elude a pursuing police officer in violation of RCW 46.61.024 ("felony flight"), must be vacated because RCW 46.61.024 was not in effect during the time the acts that formed the basis for the charge allegedly occurred. We agree. The State acknowledges in its brief that Bowman committed the offense during a period when the Legislature had inadvertently decriminalized the offense. *State v. Weber,* 99 Wn.2d 158, 659 P.2d 1102 (1983). Consequently, we reverse the "felony flight" conviction.[4]

## II
### THE "RAPE CASES"

A. FIRST RAPE TRIAL (counts 1 to 5).

On the basis of the evidence presented, a jury was entitled to find that on December 22, 1980, Bowman broke into the home of Mrs. G. and robbed and raped her at gunpoint. He also robbed Mrs. G.'s daughter at gunpoint. Although Bowman had threatened to shoot, no bullets were fired and no gun was discovered or introduced into evidence.

The jury found Bowman guilty of having committed first degree burglary (count 1), first degree rape (count 2), first degree theft (count 5), and two counts of first degree robbery (counts 3 and 4), all committed while armed with a deadly weapon and firearm. At sentencing and under the authority of *State v. Workman,* 90 Wn.2d 443, 453, 584 P.2d 382 (1978) and *State v. Hale,* 26 Wn. App. 211, 611 P.2d 1370 (1980), *review denied,* 95 Wn.2d 1030 (1981), the court struck the firearm findings as to all counts except first degree theft.

Bowman does not challenge the sufficiency of the evidence to support the convictions under counts 1 to 5. He assigns error, however, to the court's entering "deadly

---

[4]Bowman does not assign error to his negligent homicide conviction.

weapon" and "firearm" special verdicts to counts 1 to 5 and count 5 respectively. He asserts that there was insufficient evidence to prove the existence of a real, operable gun *in fact.*

The special verdict forms specifically required the jury to be "satisfied beyond a reasonable doubt" that Bowman was armed with a deadly weapon/firearm *in fact* at the time that he committed the crimes. Thus, this fulfilled the requirements of *State v. Pam,* 98 Wn.2d 748, 659 P.2d 454 (1983) and *State v. Tongate,* 93 Wn.2d 751, 613 P.2d 121 (1980).

 The remaining question raised by Bowman's assignment of error is whether there is sufficient evidence viewed in the light most favorable to the State from which a rational trier of fact could conclude beyond a reasonable doubt that Bowman was armed with a real gun during the commission of these crimes. *State v. Green,* 94 Wn.2d 216, 616 P.2d 628 (1980). The State need not introduce the actual deadly weapon at trial. "The evidence is sufficient if a witness to the crime has testified to the presence of such a weapon, as happened here. . . . The evidence may be circumstantial; no weapon need be produced or introduced." *Tongate,* at 754.

The record contains sufficient evidence to support the jury's conclusion: Mrs. G. described the gun in detail and on cross examination stated that "there was no question in my mind whatsoever" that it was a real gun. Further, the defendant's threats to use the gun added additional credence to the jury's conclusion.

> [A defendant's] express verbal threat to "shoot" his victim necessarily implied that he had access to a firearm capable of killing or seriously injuring his victim. We have previously held that a firearm is unambiguously a deadly weapon.

*State v. Hentz,* 99 Wn.2d 538, 541, 663 P.2d 476 (1983). After a careful review of the record, we are convinced that there is sufficient evidence to support the firearm and deadly weapon findings.

B. SECOND RAPE TRIAL (counts 8 to 13).

This trial, as was previously mentioned, involved two allegedly similar episodes of rape. The counts arising from these episodes were initially severed, but subsequently ordered rejoined and tried together.

In the first incident, the victim, Ms. H., testified that on March 10, 1981, Bowman approached her in the Lander Hall parking garage at the University of Washington, shielding his face with one hand and pointing a gun at her with the other. He robbed her of money and keys, directed her to a darkened stairwell, forced her to strip, raped her, and then fled in her car.

The jury convicted Bowman of first degree rape (count 8), first degree robbery (count 9), and first degree theft (count 10), all committed while armed with a deadly weapon and firearm. The firearm findings, however, were struck at sentencing pursuant to *Workman* and *Hale.*

Bowman asserts that the deadly weapon findings are not supported in the record. We disagree. As discussed above, the special verdict forms, which were identical to those in the trial of counts 1 to 5, suffered no infirmity. Further, there was substantial evidence that Ms. H. thought the gun brandished about was real. She had been acquainted with guns and described Bowman's gun in detail.

Our Supreme Court recently rejected the argument posed in Bowman's next assignment of error. A defendant's threat to use a deadly weapon although armed only with a toy gun will support a first degree rape conviction. *State v. Hentz, supra.* It is the credibility of the threat, however, which forms the fulcrum upon which the evidence must balance. Because the record contains sufficient evidence to support the jury's special verdict that Bowman was armed with an actual weapon, it also establishes a fortiori that Bowman's threats were credible. Therefore, the elevation of the rape of Ms. H. to first degree must stand.

The other rape victim, Mrs. R., testified that at approximately 3 p.m. on February 3, 1981, she was placing packages into her car in the Bon Marche parking garage in

downtown Seattle. Just then a man approached her from behind, clasped his gloved hand over her mouth, held a knife to her throat, and ordered her into the car. She glanced slightly back and saw that her assailant was a black man. While sliding over to the passenger seat, she caught another glimpse of her assailant in the rearview mirror. He demanded her money and jewelry and ordered her to tie her coat belt about her eyes. He drove the car to another parking garage, ordered her into the backseat, and raped her at knife point.

He then locked her in the trunk and drove around for awhile. After stopping, he opened the trunk, threatened to rape her again, took her watch and wedding ring, fixed the trunk so she could get out, commanded her to remain there for at least 30 minutes, and threatened her and her children with severe reprisals should he ever be caught.

Trial evidence included Mrs. R.'s purse which was found 3 days later and which was branded with Bowman's finger-prints. The State also introduced evidence associated with the similarly perpetrated rape/robbery/theft of Ms. H. (counts 8 to 10) to establish the identity of Mrs. R.'s assail-ant. At trial, Mrs. R. identified Bowman (the only black man in the courtroom) as her assailant, although she had been unable to identify Bowman in a previous lineup and, in fact, had identified another man as her assailant. Addi-tionally, laboratory evidence and expert testimony was introduced which established that Bowman was among the one–third of the male population matching the blood and secretor type of Mrs. R.'s assailant.

The jury convicted Bowman of first degree rape (count 11), first degree kidnapping (count 12), and first degree robbery (count 13), all committed while armed with a deadly weapon. Bowman received concurrent life sentences on counts 11 through 13.

Bowman does not question that the evidence establishes that Mrs. R. was raped, robbed, and kidnapped, nor does he challenge the sufficiency of the evidence which supports his convictions under counts 1 to 5 (rape of Mrs. G.) and

counts 8 to 10 (rape of Ms. H.). He does challenge the sufficiency of the evidence, however, which establishes the identity of Mrs. R.'s assailant.

■ The appropriate test for establishing the sufficiency of the evidence on review is, as noted above,

> whether, after viewing the evidence most favorable to the State, *any rational trier of fact* could have found the essential elements of [the crime] *beyond a reasonable doubt.*

*State v. Green,* 94 Wn.2d at 221–22. *See Jackson v. Virginia,* 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979). We find that under this test the evidence is sufficient to support the jury's verdict: Mrs. R. caught a glimpse of her assailant on at least two occasions and was able to identify Bowman in court; a qualified expert conclusively identified the latent fingerprint found on Mrs. R.'s purse to be Bowman's; expert testimony established that Bowman matched the blood and secretor type of Mrs. R.'s assailant; it is undisputed that Bowman was in Seattle at the time of the incidents; and additionally, the evidence associated with the rape of Ms. H. further supported the jury's conclusion that Bowman committed these heinous crimes against Mrs. R.'s person.

Bowman also contends that his first degree convictions for raping and kidnapping Mrs. R. must merge, because the kidnapping conviction was inextricably tied to the rape conviction under the "to–convict" kidnapping instruction.[5]

■ We resolve this issue through the application of the concurrent sentences doctrine which precludes our reaching the specific question of merger.[6]

We concede the concurrent sentence doctrine should

---

[5]The "to–convict" kidnapping instruction (instruction 9, Clerk's Papers, at 126) required the jury to find that the abduction was committed "with intent to facilitate the commission of the felony of rape or flight thereafter."

[6]Were we to reach the specific question of merger, we would conclude that the convictions should not be merged because the crimes had independent purposes and effects. *State v. Vladovic,* 99 Wn.2d 413, 421, 662 P.2d 853 (1983).

not be employed indiscriminately in each instance where one or more of multiple convictions are not challenged, or if challenged are affirmed, and all sentences are made to run concurrently. Rather its use will depend on the facts of each case. Factors we will consider, *inter alia,* are: the seriousness of the error(s) assigned on appeal, the weight of the evidence against the defendant, and the actual ramifications of applying the doctrine to defendant's sentence situation. We will not speculate, however, as to possible or remote collateral consequences of sentencing.

*State v. Briceno,* 33 Wn. App. 101, 102, 651 P.2d 1093 (1982).

Briceno had received a 20–year sentence for first degree burglary and a 10–year sentence for second degree assault to run concurrently. The appellate court affirmed the convictions and sentences refusing to consider whether the second degree assault charge merged into the first degree burglary conviction because (1) the defendant was punished only once, (2) the evidence supported the conviction for both crimes which overcame any "collateral consequences" or "stigma" associated with such convictions, and (3) the brutality of the assault could only affect the parole board's future decision if the crimes were not merged. *See also State v. Clark,* 34 Wn. App. 173, 659 P.2d 554, *review denied,* 99 Wn.2d 1017 (1983).

We find the reasoning in *Briceno* and *Clark* compelling. The evidence, the sufficiency of which is questioned only as to the perpetrator's identity and not to the occurrence of the crimes themselves, pointedly supports the jury's verdicts of both rape and kidnapping; Bowman will be punished only once, having received concurrent sentences; merging the first degree rape and first degree kidnapping convictions would not permit the parole board to weigh the nature of the offenses as the Legislature intended; and failure to merge the crimes would not have an appreciably adverse impact, *see Clark,* at 178, or place an unwarranted "stigma" upon Bowman. What the court said about the defendant in *State v. Goebel,* 36 Wn.2d 367, 380, 218 P.2d 300 (1950) is equally applicable here: "[I]f the evidence of

the prosecuting witnesses . . . is to be believed, to describe [the defendant] as a beast is to libel the entire animal kingdom."[7]

Bowman also assigns error to the lower court's (1) denying his motion to exclude evidence associated with the rapes of Ms. H. and Mrs. R. in the trial of all counts arising from these two rapes; and (2) rejoining for a single trial all counts arising from these two events. We find no error.

■ The evidence was admitted to establish the identity of the perpetrator, a well recognized exception to the general rule that evidence of collateral crimes is generally inadmissible. *State v. Goebel*, 40 Wn.2d 18, 240 P.2d 251 (1952); *State v. Fernandez*, 28 Wn. App. 944, 628 P.2d 818 (1980), *aff'd on remand*, 29 Wn. App. 278, 628 P.2d 827, *review denied*, 96 Wn.2d 1003 (1981); ER 404(b). *See* Annot., 2 A.L.R.4th 330, § 5(a) (1980). We have also recognized the so–called "handiwork" exception, stating that "evidence of other unrelated crimes may be admissible if such other crimes are so nearly identical in method as to earmark them as the handiwork of the defendant." *State v. Fernandez*, 28 Wn. App. at 949.

To ensure that each crime is tried and proved on its own, however, these exceptions are not boundless. The evidence (1) must be logically relevant, ER 401, 402; (2) must be necessary to prove an essential ingredient of the crime (*e.g.*, identity, *accord, State v. Saltarelli*, 98 Wn.2d 358, 655 P.2d 697 (1982)); (3) if relevant, must have probative value exceeding the potential for prejudice to the defendant, ER 403; and (4) if admitted, must be restricted to the relevant issues by limiting instructions. *State v. Saltarelli, supra.*

Bowman does not assign error to the judge's failure to give limiting instructions, nor did he request a limiting instruction, *see State v. Friederick*, 34 Wn. App. 537, 663 P.2d 122 (1983), and must be deemed to have waived that

---

[7]We have attempted to include only such facts as are pertinent to our discussion of the legal issues raised and have omitted many of the sordid and shocking details of each of the three rape incidents.

issue on appeal. *State v. Kroll,* 87 Wn.2d 829, 558 P.2d 173 (1976).

Keeping in mind that the potential for prejudice is highest in sex offense cases, *Saltarelli,* at 363, the trial court must carefully exercise its discretion by stating how the similarity of the two offenses bears upon the identification of Mrs. R.'s assailant. That decision will be disturbed only upon a "clear showing of abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 26, 482 P.2d 775 (1971). Furthermore, the trial court's decision must be based upon a preponderance of the evidence that the crimes were committed and that the defendant committed them. *State v. Robtoy,* 98 Wn.2d 30, 42, 653 P.2d 284 (1982); *State v. Tharp,* 96 Wn.2d 591, 594, 637 P.2d 961 (1981).

The lower court did not abuse its discretion. The relevance of the evidence sought to be excluded cannot be doubted and, because identity was at issue, the evidence was necessary to prove an essential ingredient of the crime. *Cf. State v. Saltarelli, supra* (no evidence of a prior alleged and uncharged rape was admissible to establish motive and intent when consent was the only issue). The trial court carefully considered how the similarity of the two events bore upon the identification of Mrs. R.'s assailant, thereby balancing the probative value and potential prejudice, *cf. Saltarelli,* at 363, as well as indicating how the "handiwork" and "identity" exceptions were fulfilled.

Because the court's discretionary decision to rejoin the trials was based upon a proper evidentiary ruling, and because no greater prejudice inures to the defendant in combined trials where the evidence would have been admissible in separate trials, it follows that rejoinder was permissible. CrR 4.3.

## III
### HABITUAL CRIMINAL PROCEEDING

Bowman was charged and convicted of negligent homi-

cide under a cause number different from the cause number for the "rape cases." After the jury returned guilty verdicts in these separate trials, but before sentencing, the State filed a supplemental habitual criminal information under the "rape cases" cause number. The jury returned a guilty verdict based upon three prior guilty pleas: a January 27, 1976 guilty plea to escape and two December 18, 1973 guilty pleas, one to second degree burglary and one to taking and riding a motor vehicle without permission of the owner.

Thereafter, the court sentenced Bowman under the habitual criminal statute, RCW 9.92.090, to life imprisonment on each of counts 1 to 5 (Mrs. G. case) to run consecutively with life imprisonment on each of counts 8 to 13 (Ms. H. and Mrs. R. cases), and to life imprisonment for the negligent homicide to run concurrently with the sentences in the "rape cases."

█ Bowman assigns two errors to the habitual criminal proceeding. First, he claims that the habitual criminal finding cannot properly enhance his sentence under the negligent homicide case because the habitual criminal information was filed only under the "rape cases" cause number. We do not agree.

> [O]nce the status of habitual criminal under [RCW 9.92-.090] has attached to a person, successive determinations for the same person are meaningless unless the Governor has pardoned him. This is because the status once determined can be utilized thereafter by the sentencing court, upon receipt of proof of such status, in establishing the appropriate sentence for an habitual criminal convicted of another crime.

(Footnotes omitted.) *State v. Ogle*, 3 Wn. App. 549, 550–51, 475 P.2d 913 (1970); *State v. Gilcrist*, 25 Wn. App. 327, 606 P.2d 716 (1980). Because successive determinations of habitual criminal status for the same person are meaningless and negate judicial economy, only one habitual criminal proceeding is necessary when sentencing for convictions under two cause numbers is pending at the time the habit-

ual criminal proceeding culminates in a finding that the defendant is a habitual criminal. The only limitation is that the sentencing court must receive proof of such status. The judgment and sentencing here reflects the trial judge's receipt of this proof.

Second, Bowman maintains that the State is precluded from using his previous guilty pleas to support a habitual criminal finding, because it failed to prove in the habitual criminal proceeding that he knew of his right not to testify against himself at the time he entered his guilty pleas.

■ Once the defendant raises an issue of a past conviction's constitutional validity in a habitual criminal proceeding, the State must prove that the defendant knowingly and voluntarily entered his guilty pleas. *Boykin v. Alabama,* 395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969). In *State v. Holsworth,* 93 Wn.2d 148, 607 P.2d 845 (1980), our Supreme Court interpreted *Boykin* as requiring the State to show the defendant knowingly and voluntarily pleaded guilty by proving that the defendant was aware of the nature of the offense charged against him and the consequences of his plea, as well as specifically aware of his rights to a jury trial, to remain silent, and to confront his accusers. *See also State v. Warriner,* 100 Wn.2d 459, 670 P.2d 636 (1983) (Department Two, per curiam); *State v. Hennings,* 100 Wn.2d 379, 670 P.2d 256 (1983); *State v. Chervenell,* 99 Wn.2d 309, 662 P.2d 836 (1983).

Bowman's "Statement of Defendant on Plea of Guilty" in each of the three underlying convictions sets out the minimum sentence for each crime and enumerates several rights Bowman would be waiving by entering his guilty plea. They include the right to a jury trial, to confront witnesses, to call witnesses on his behalf, to require the State to prove the charge beyond a reasonable doubt, and to appeal. The record, however, contains no reference to Bowman's privilege against compulsory self–incrimination.

We are compelled to vacate the habitual criminal findings pursuant to *Holsworth,* as elucidated in *Chervenell,* despite our belief that the exceptional circumstances in

*Boykin*[8] do not command the detailed disclosure of Bowman's privilege against compulsory self–incrimination to prove that he knowingly and voluntarily pleaded guilty to the underlying crimes,[9] *see Chervenell,* 99 Wn.2d at 319 (Rosellini, J., dissenting), particularly where (1) disclosure of that right has been required since *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966), (2) the defendant presented no *Miranda* defense at the time he entered his pleas, or on appeal from those pleas, and (3) he had been expressly advised of all of his other rights. Our record here, unlike that in *Boykin,* is clearly not a "silent record." Under the totality of the circumstances, we find it difficult to believe that Bowman's guilty pleas were other than voluntarily and knowingly made. Nevertheless, as noted above, we are bound to vacate the habitual criminal findings.

Because the habitual criminal proceedings below were conducted under the law as set forth in *State v. Chervenell,* 28 Wn. App. 805, 626 P.2d 530 (1981), which was later reversed in *State v. Chervenell,* 99 Wn.2d 309, 662 P.2d 836 (1983), the State requests that this matter be "remanded

---

[8]There was no evidence that the judge presiding over Boykin's trial or Boykin's lawyer discussed with Boykin *any* of his rights. Additionally, the trial judge asked Boykin no questions concerning his guilty plea to five counts of common law robbery; Boykin did not address the court; at the sentencing proceeding before a jury, Boykin's lawyer engaged in only limited cross examination of adverse witnesses and presented no testimony concerning Boykin's background or character; the court, in its jury instructions at the sentencing proceeding, stressed the importance of Boykin's pleas; and the jury sentenced Boykin to death on each count.

[9]Our Supreme Court apparently held this same view in light of its adoption of post–*Boykin* guilty plea forms which were used here. *See* CrR 4.2, Statement of Defendant on Plea of Guilty (adopted April 18, 1973, effective July 1, 1973). These forms did not recite that the defendant was waiving his privilege against compulsory self–incrimination. Additionally, as was recognized in *State v. Williams,* 98 Wn.2d 428, 431, 656 P.2d 477 (1982), CrR 4.2, effective before Bowman entered his guilty pleas, required the trial judge to make direct inquiries of the defendant as to whether he understood the nature of the charge and the consequences of his plea. This procedure was followed here, unlike the semi–summary proceeding in *Boykin.*

solely on the habitual criminal proceeding for presentation of further evidence on defendant's awareness at the time of his plea, as to his right to remain silent." Brief of Respondent, at 54. Although our inclination is to grant this request, recent Supreme Court cases appear to prevent such action.

In *State v. Chervenell,* this court affirmed the conviction, but remanded for the introduction of further evidence on the issue of voluntariness. The Supreme Court by a 5–to–4 majority reversed the habitual offender findings due to an insufficiency of evidence and remanded the consolidated causes for "further proceedings not inconsistent with this opinion." 99 Wn.2d at 319. The decision, however, did not specifically preclude a remand for the introduction of further evidence.

Before the Supreme Court rendered its opinion in *Chervenell,* it unanimously decided *State v. Williams,* 98 Wn.2d 428, 656 P.2d 477 (1982) where without reservation it cited to this court's disposition in *Chervenell.*

In *Williams,* the defendants had failed to question the constitutionality of their prior guilty pleas at habitual criminal proceedings held before our Supreme Court decided *Holsworth.* Instead, they raised the question for the first time on appeal. The unanimous court recognized a limited retroactive effect of *Holsworth,* reversed the three habitual criminal findings, and remanded the appeals to the trial court "for hearings upon the question whether [the defendants'] prior guilty pleas were made knowingly and voluntarily, according to the criteria set forth in *State v. Holsworth,* 93 Wn.2d 148, 607 P.2d 845 (1980)." *Williams,* at 434.

Such a conclusion recognized that there was insufficient evidence to support the habitual criminal findings. Where a court, trial or appellate, determines that the evidence is insufficient to support a guilty verdict or habitual criminal findings, the double jeopardy clause prevents giving the State another opportunity to prove its case. *Hennings,* 100 Wn.2d at 383–84 (citing *Tibbs v. Florida,*

457 U.S. 31, 72 L. Ed. 2d 652, 102 S. Ct. 2211, 2217–18 (1982) and *Burks v. United States,* 437 U.S. 1, 57 L. Ed. 2d 1, 98 S. Ct. 2141 (1978)).

Additionally, in *State v. Warriner, supra,*[10] our Supreme Court appears to have rejected an opportunity to grant the disposition requested here by the State. Consequently, our interpretation of *Warriner* in light of *Hennings* precludes us from remanding this case to reinstate the habitual criminal proceeding for further findings, notwithstanding trial courts' and prosecutors' justifiable reliance upon post–*Boykin* guilty plea forms promulgated by our State Supreme Court, and notwithstanding the disposition in *State v. Williams, supra.*

Accordingly, we affirm Bowman's convictions under counts 1 to 5 and counts 8 to 13 (as well as his negligent homicide conviction), but we reverse his conviction for attempting to elude a pursuing police officer. We also vacate the habitual criminal findings and remand the cause for resentencing.

ANDERSEN, J., concurs.

WILLIAMS, J. (concurring)—I concur with the majority opinion except for the discussion concerning the habitual criminal charge. A reversal on appeal based upon insufficiency of the evidence, as here, is tantamount to an acquittal. *Burks v. United States,* 437 U.S. 1, 57 L. Ed. 2d 1, 98 S. Ct. 2141 (1978). A retrial is barred upon principles of

---

[10]Department Two of the Washington Supreme Court summarily vacated the habitual criminal convictions in *State v. Warriner,* 100 Wn.2d 459, 670 P.2d 636 (1983), and remanded for resentencing on the basis of *State v. Chervenell,* 99 Wn.2d 309, 662 P.2d 836 (1983), without discussing double jeopardy issues which were raised in *State v. Hennings,* 100 Wn.2d 379, 670 P.2d 256 (1983) (filed only 2 weeks prior to *Warriner*), or the effects of *State v. Williams, supra.*

double jeopardy. *State v. Hennings,* 100 Wn.2d 379, 670 P.2d 256 (1983).

Review denied by Supreme Court May 11, 1984.