IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No.  38566-3-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| DENNIS JEROME SLEEPER, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — We must decide whether the State proved, as an element of a current crime, the constitutional validity of a twenty-seven-year-old conviction based on a guilty plea when a docket entry for the accused's plea simply reads "rights given."  We rule in the negative.  We hold that the State did not prove beyond a reasonable doubt predicate crimes that raised violations of a protection order from misdemeanors to felonies.

FACTS

Appellant Dennis Sleeper's primary challenge on appeal relates to the validity of a 1992 guilty plea to violation of a protection order, which plea the State employed to convict Sleeper of felonies for violation of a 2019 protection order.  In 1992, Sleeper pled guilty to a single charge of violating a protection order in King County District Court.  Nevertheless, by 2019, the King County Clerk's Office had destroyed all, but one, of the

No. 38566-3-III
*State v. Sleeper*

records associated with the prosecution due to the case's age. The one remaining record

was a seven-page printout from the King County District Court Clerk's Office entitled

"DOCKET," which, in part, contained clerk entries related to the 1992 prosecution for

violation of a protection order. We refer to this document as "the docket."

The docket reflected that, on February 27, 1992, Dennis Sleeper entered a plea of

guilty. The document declared, in relevant part:

> Defendant Arraigned on Charge 1
> Plea/Response of Guilty Entered on Charge 1
> Finding/Judgment of Guilty for Charge 1
> DEFENDANT APPEARED BEFORE COMMISSIONER FREEBORN.
> *RIGHTS GIVEN*
> CONTINUE FOR PRE-SENTENCE REPORT

Clerk's Papers (CP) at 126 (emphasis added).

We step forward twenty-seven years. On November 17, 2019, the Thurston

County District Court entered a no-contact protection order that precluded Dennis

Sleeper from contacting his girlfriend, Daniela Owens. The order read, in part:

> Do not contact protected person directly, indirectly, in person or
> through others, by phone, mail, or electronic means except by mailing or
> service of process of court documents through that—through a third party
> or contact by defendant's lawyers.

Report of Proceedings (RP) at 294. In November 2019, Sleeper resided in the Olympia

jail on charges from an earlier prosecution.

Officer Vasile Kovzun of the Olympia Police Department investigated phone calls

initiated from the Olympia jail, which calls employed Dennis Sleeper's unique

2

identification number or PIN. Officer Kovzun discovered that, between November 20 and December 17, 2019, thirty-two calls using Sleeper's PIN went to a phone number belonging to Sleeper's personal cell phone. Daniela Owens then possessed Sleeper's cell phone.

Officer Sean O'Brien of the Olympia Police Department also investigated calls from the Olympia jail using Dennis Sleeper's PIN. Officer O'Brien listened to recordings of three of these phone calls. Based on these recordings, O'Brien determined that Sleeper was the caller. He also believed, and Daniela Owens later acknowledged, that Owens answered the calls.

PROCEDURE

The State of Washington charged Dennis Sleeper with three counts of felony violation of a no-contact order. The State alleged that the crimes constituted domestic violence, as Daniela Owens was Sleeper's intimate partner. The State further alleged that Sleeper had at least two prior convictions for violating a protection, restraining, or no-contact order. Without the earlier two convictions, Sleeper's recent alleged violations of a protective order would constitute misdemeanors, not felonies. The State planned to use the 1992 conviction, mentioned earlier, as one of the predicate crimes.

Before trial, Dennis Sleeper moved to exclude evidence of the 1992 conviction for violation of a protection order. In his motion, Sleeper argued that the February 27, 1992 docket entry failed to demonstrate the constitutional validity of his guilty plea and

conviction. Sleeper highlighted that the docket did not identify those constitutional rights of which the trial court notified him. For example, the docket entry did not specify his being warned of foregoing the right to counsel, right to a jury trial, the right to remain silent, and the right to appeal. The docket did not establish whether counsel represented him at the plea entry or whether he waived counsel at the time of the plea. Thus, Sleeper contended that the State could not establish that he made his 1992 guilty plea knowingly, intelligently, and voluntarily.

In its response, the State asserted that the docket entry reading "rights given" sufficiently established the validity of Dennis Sleeper's guilty plea. According to the State, Sleeper based his challenge to the 1992 conviction on assumptions and guesses.

The trial court took judicial notice of the documents related to the 1992 King County case, including the judgment and sentence, having been destroyed. The court denied Sleeper's motion to exclude, while concluding that the docket could properly serve as proof of a prior conviction under the circumstances. During trial, the court admitted the docket as an exhibit.

The jury found Dennis Sleeper guilty on all three counts of violation of a no-contact order and that Sleeper had been at least twice convicted of a prior violation of a protection order. The jury further found that Sleeper's crimes constituted domestic violence against an intimate partner.

At sentencing, the trial court calculated Dennis Sleeper's offender score at 8. The

4

parties agreed with the court's calculation. On the judgment and sentence, however, the court listed Sleeper's offender score for each count as 10. The trial court sentenced Sleeper to 60 months' confinement on each count and ordered that the sentences run concurrently.

## LAW AND ANALYSIS

On appeal, Dennis Sleeper repeats his contention that the 1992 docket entry failed to establish the validity of his guilty plea. He argues that both the docket should not have been admitted as an exhibit and that, even assuming proper admission of the exhibit, the docket does not constitute sufficient evidence of the 1992 conviction so as to raise his current convictions to a felony. He contends that the State possessed the burden to prove the validity of his conviction beyond a reasonable doubt and that the trial court's ruling shifted to him the burden to disprove the conviction's constitutional validity. He requests that this court vacate the enhanced felony convictions and reduce the convictions to misdemeanors. He also challenges the trial court's listing of his offender score as 10.

The State responds that its burden to prove the validity of the guilty plea never arose, because Sleeper failed to make a colorable, fact-specific argument supporting his claim of constitutional error in the prior conviction. The State agrees that this court should remand for correction of Sleeper's offender score.

No. 38566-3-III
*State v. Sleeper*

Felony Convictions

We agree with Dennis Sleeper's contention that the State failed to submit sufficient evidence to prove the validity of the 1992 conviction. Therefore, we do not address the admissibility of the docket as an exhibit.

This court reviews the sufficiency of the evidence de novo. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). When analyzing whether sufficient evidence supports a defendant's conviction, this court views the evidence in the light most favorable to the prosecution and determines whether any rational fact finder could have found the elements of the crime beyond a reasonable doubt. *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014).

RCW 26.50.110 governs violation of court orders, including no-contact orders. The statute provides, in relevant part:

> (5) A violation of a court order issued under this chapter, chapter 7.92, 7.90, 9A.40, 9A.46, 9A.88, 9.94A, 10.99, 26.09, 26.10, 26.26A, 26.26B, or 74.34 RCW . . . is a class C felony *if the offender has at least two previous convictions for violating the provisions of an order* issued under this chapter, chapter 7.90, 9A.40, 9A.46, 9A.88, 9.94A, 10.99, 26.09, 26.10, 26.26A, 26.26B, or 74.34 RCW. . . . The previous convictions may involve the same victim or other victims specifically protected by the orders the offender violated.

(Emphasis added.)

When predicate convictions are an essential element of a crime, the State must prove the previous convictions beyond a reasonable doubt. *State v. Robinson*, 8 Wn.

6

App. 2d 629, 635, 439 P.3d 710 (2019). Predicate convictions pose as an element for felony violations of a no-contact order under RCW 26.50.110(5) and habitual criminal proceedings under RCW 9.92.090. *State v. Robinson*, 8 Wn. App. 2d 629, 635 (2019) (RCW 26.50.110(5)); *State v. Bowman*, 36 Wn. App. 798, 810, 678 P.2d 1273 (1984) (RCW 9.92.090).

The validity of the no-contact order poses a question of law within the province of the trial court to decide as part of the court's gate-keeping function. *State v. Miller*, 156 Wn.2d 23, 31, 123 P.3d 827 (2005); *State v. Robinson*, 8 Wn. App. 2d 629, 635 (2019). The trial judge should not permit an invalid, vague, or otherwise inapplicable no-contact order to be admitted into evidence or used as a predicate conviction for a crime. *State v. Miller*, 156 Wn.2d 23, 24 (2005).

A defendant may raise a defense to a prosecution based on an earlier conviction by alleging the constitutional invalidity of a predicate conviction. *State v. Summers*, 120 Wn.2d 801, 812, 846 P.2d 490 (1993). On doing so, the State must prove beyond a reasonable doubt that the predicate conviction is constitutionally sound. *State v. Summers*, 120 Wn.2d 801, 812 (1993). In raising this defense, the defendant bears the initial burden of offering a colorable, fact-specific argument supporting the claim of constitutional error in the prior conviction. *State v. Summers*, 120 Wn.2d at 812. Only after the defendant has made this initial showing does the State's burden arise. *State v. Summers*, 120 Wn.2d at 812; *State v. Robinson*, 8 Wn. App. 2d 629, 635 (2019).

Washington decisions suggest that this burden is minimal, and the defendant meets its initial onus by merely claiming the record of the earlier convictions fails to expressly read that the plea court read to him one or more constitutional rights attended to a criminal trial. *State v. Warriner*, 100 Wn.2d 459, 670 P.2d 636 (1983); *State v. Chervenell*, 99 Wn.2d 309, 662 P.2d 836 (1983); *State v. Bowman*, 36 Wn. App. 798 (1984). A challenge to the validity of the predicate conviction does not constitute a collateral attack on the prior conviction. *State v. Summers*, 120 Wn.2d 801, 810 (1993).

A certified copy of the judgment and sentence presents the best evidence of a prior conviction. *In re Personal Restraint of Adolph*, 170 Wn.2d 556, 566, 243 P.3d 540 (2010); *State v. Ford*, 137 Wn.2d 472, 480, 973 P.2d 452 (1999). The State, however, may introduce other comparable documents or transcripts of prior proceedings to establish criminal history. *In re Personal Restraint of Adolph*, 170 Wn.2d 556, 566 (2010); *State v. Ford*, 137 Wn.2d 472, 480 (1999).

For a guilty plea to be valid, the defendant must knowingly and voluntarily enter his plea and waive his constitutional rights to assistance of counsel if he or she lacks counsel, to confront his accusers, against self-incrimination, and to a jury trial. *Burgett v. Texas*, 389 U.S. 109, 114-15, 88 S. Ct. 258, 19 L. Ed. 2d 319 (1967); *State v. Warriner*, 100 Wn.2d 459, 460-61 (1983); *State v. Holsworth*, 93 Wn.2d 148, 153, 607 P.2d 845 (1980). Critical to our ruling is the principle that a later court may not presume waiver of counsel from a silent record. *Burgett v. Texas*, 389 U.S. 109, 114-15 (1967). In

assessing the voluntariness of a guilty plea, the record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). Anything less does not entail a waiver. *Boykin v. Alabama*, 395 U.S. 238, 242 (1969).

Dennis Sleeper contends that he made a colorable, fact-specific argument when challenging the validity of his 1992 guilty plea conviction before the trial court because the docket entry did not provide sufficient information to determine whether his plea was knowing, intelligent, and voluntary. He emphasizes that the document did not indicate whether counsel represented him during his guilty plea or whether he waived his right to counsel. He highlights that the docket does not identify those rights given to him, let alone constitutional rights.

The State, when arguing that Dennis Sleeper fails to present a colorable argument, highlights that the docket evidences that Dennis Sleeper pled guilty to violating a protection order. The docket states that "[r]ights given." CP at 126 (capitalization omitted). The State adds that Sleeper presented no declaration averring that the King County court deprived him of his rights when entering his guilty plea. According to the State, Sleeper rested his challenge on the mere possibility of constitutional infirmity. Practical reasoning might lead us to agree that the 1992 King County District Court must

have read Sleeper all of his rights, particularly since Sleeper does not declare under oath

to the contrary, but Washington case law teaches otherwise.

We deem *State v. Warriner*, 100 Wn.2d 459 (1983) and *State v. Bowman*, 36 Wn.

App. 798 (1984) controlling. In *Warriner*, our high court vacated habitual criminal

findings in David Warriner's prosecution and remanded for resentencing, because his

earlier guilty pleas neglected to reference his right to remain silent. The court held, in

relevant part:

> David Warriner's habitual criminal status rests upon his present
> convictions for assault and negligent homicide and his two prior
> convictions for burglary. Each burglary conviction is based upon a guilty
> plea. *Neither of Warriner's written guilty plea statements refers to the
> right to remain silent. Also, the transcripts of the plea hearings reveal that
> neither trial judge advised Warriner that by pleading guilty he would be
> waiving his right to remain silent*.

*State v. Warriner*, 100 Wn.2d at 461-62 (emphasis added). The Supreme Court observed

similar deficiencies in the guilty plea statements of the remaining three defendants, Allen

Harris, Samuel James, and Charles Dickerson. Based on these errors, the court held the

State failed to meet its burden in proving the defendants' knowledge of their right to

remain silent.

In *State v. Bowman*, 36 Wn. App. 798 (1984), the jury found Ronnie Bowman to

be a habitual offender based on three prior guilty pleas. On appeal, he argued that the

State failed to prove, during the habitual offender proceeding, that he knew about his

10

right against self-incrimination at the time he entered his guilty pleas. This court

observed that:

> Bowman's "Statement of Defendant on Plea of Guilty" in each of
> the three underlying convictions sets out the minimum for each crime and
> enumerates several rights Bowman would be waiving by entering his guilty
> plea. They include the right to a jury trial, to confront witnesses, to call
> witnesses on his behalf, to require the State to prove the charge beyond a
> reasonable doubt, and to appeal. *The record, however, contains no
> reference to Bowman's privilege against compulsory self-incrimination*.

*State v. Bowman*, 36 Wn. App. 798, 811 (1984) (emphasis added). This court conceded

the difficulty of concluding that Bowman's guilty pleas were other than voluntarily and

knowingly made. Nevertheless, we deemed ourselves bound to vacate the habitual

criminal findings because of the lack of confirmation of the advice to remain silent.

The record of a prior conviction introduced by the State in Dennis Sleeper's

prosecution contains even less information than the data introduced by the State in

Ronnie Bowman's prosecution. The docket confirms no express mention of a

constitutional right.

The State distinguishes *State v. Warriner* by arguing that, unlike in Dennis

Sleeper's prosecution, transcripts in *Warriner* conclusively demonstrated an insufficient

colloquy by the trial court. The State maintains that, for a defendant to meet his or her

burden in challenging a predicate conviction's constitutional validity, the evidence must

affirmatively establish a violation of the defendant's rights. The State relies on *State v.*

11

*Gimarelli*, 105 Wn. App. 370, 20 P.3d 430 (2001) to support this contention. We disagree.

In *State v. Gimarelli*, this court held that the error must appear on the face of the conviction. This court reasoned that this requirement "is consistent with the purpose of not allowing a defendant to use a *sentencing hearing to collaterally attack* his or her prior convictions." *State v. Gimarelli*, 105 Wn. App. at 376. Nevertheless, in *Gimarelli*, Gary Gimarelli challenged a prior conviction at sentencing to show that the jury in the prior prosecution had not issued a unanimous verdict.

Dennis Sleeper does not collaterally attack his 1992 conviction, but rather the State sought to prove the conviction as a predicate element to raising his crime to a felony. Thus, the standard applied in *Gimarelli* lacks relevance.

Incorrect Offender Score

Dennis Sleeper asserts that his judgment and sentence mistakenly lists his offender score at 10, even though the trial court and the parties agreed his offender score should be 8. The State agrees that the trial court intended to sentence Sleeper pursuant to a score of 8 and that the judgment and sentence contains a clerical error.

A scrivener's or clerical error in a judgment and sentence may be corrected at anytime pursuant to CrR 7.8(a). *In re Personal Restraint of Mayer*, 128 Wn. App. 694, 701-02, 117 P.3d 353 (2005). To remedy a scrivener's error on appeal, this court remands for correction. *In re Personal Restraint of Mayer*, 128 Wn. App. at 701. On

12

remand, the sentencing court should also determine whether an offender score is even relevant when we reduce the felonies to misdemeanors.

CONCLUSION

We remand to the superior court to reduce Dennis Sleeper's three felony convictions to misdemeanor convictions and for resentencing based on these reductions and a correction of the scrivener error in the original offender score.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Pennell, J.

_____
Szambelan, J.P.T.

13