[No. 58883-0.    En Banc.    February 18, 1993.]

THE STATE OF WASHINGTON, *Respondent*, v. ARTHUR
SUMMERS, *Petitioner*.

*In the Matter of the Personal Restraint of*
ARTHUR SUMMERS, *Petitioner*.

*Irene Tanabe* of *Washington Appellate Defender Association,* for petitioner.

*Norm Maleng, Prosecuting Attorney, Theresa Fricke, Senior Prosecuting Attorney,* and *Pamela Mohr, Deputy,* for respondent.

SMITH, J. — Petitioner Arthur Hinton Summers seeks review of a decision of the Court of Appeals, Division One,

which affirmed his 1989 conviction for violation of RCW 9.41.040, the Uniform Firearms Act, based on a 1976 predicate conviction of manslaughter in the first degree. He claims that the 1976 conviction was constitutionally invalid because the trial court failed to instruct the jury that the State bears the burden of proof upon a claim of self-defense; and that as a consequence of this failure, one element of RCW 9.41.040 is constitutionally invalid under 1977[1] and 1983[2] decisions of this court. We granted review and now reverse the Court of Appeals.

## QUESTION

The principal question in this case is whether a prior conviction in 1976 for manslaughter in the first degree used in 1989 to prove one element of violation of RCW 9.41.040, the Uniform Firearms Act, is constitutionally invalid because of an instruction on self-defense in the 1976 case which became clearly contrary to decisions of this court only in 1983.[3]

## FACTS

The facts in the principal firearms case are not disputed. However, because Petitioner Summers' 1989 conviction for violation of the Uniform Firearms Act relied upon his 1976 conviction for first degree manslaughter, a review of the facts of that predicate case is necessary.

The following statement is quoted from Petitioner Summers' personal restraint petition which was consolidated with this appeal:

> The incident giving rise to the charges in this case involved a tavern brawl between Mr. Summers and two sailors. On July 2, 1976, Mr. Summers was sitting in Smitty's [a tavern at 7th Avenue and Pike Street in Seattle], drinking beer and listening to "soul" music when two sailors entered. The sailors were white men, and Mr. Summers is a black man. The sailors were quite intoxicated and made some disparaging remarks

---

[1]*State v. Roberts*, 88 Wn.2d 337, 562 P.2d 1259 (1977).

[2]*State v. McCullum*, 98 Wn.2d 484, 656 P.2d 1064 (1983).

[3]*State v. McCullum, supra.*

about the music and began harassing Mr. Summers with racial slurs. The exact nature of what followed was not clear to the witnesses, but one of the sailors struck Mr. Summers, and a fight ensued. Mr. Summers held out a knife and began slashing with it, as the other sailor broke a beer glass in Mr. Summers' face. An aid car was called for the two sailors. One of the sailors died from stab wounds and the other sailor was treated at the hospital for his injuries. Mr. Summers left the tavern and went to his hotel a few blocks away. When the police arrived, Mr. Summers gave a full account of what happened and was also taken to the hospital for his injuries.[4]

Petitioner Summers was later charged in the King County Superior Court with second degree murder for the death of John William Moloney and with second degree assault of William John Bruce. In a jury trial before the Honorable Frank J. Eberharter, the court on September 23, 1976, instructed the jury on the offense of second degree murder[5] and the lesser included offense of first degree manslaughter.[6]

On November 4, 1976, petitioner was convicted of the lesser offense of first degree manslaughter with use of a deadly weapon and was acquitted of the assault charge. Petitioner appealed. Appointed counsel filed an *"Anders"* brief.[7] Petitioner also challenged the manslaughter conviction in a postconviction petition alleging that the trial court erred in refusing his instructions on self-defense.[8] On August 3, 1978, in an unpublished opinion, the Court of Appeals affirmed the conviction and dismissed the petition.

The 1989 conviction for violation of the Uniform Firearms Act was based upon events occurring on October 14, 1988.

---

[4](Citations omitted.) Brief in Support of Personal Restraint Petition, at 5-6. Respondent State of Washington (State) in its brief, at page 1, concedes that "defendant has presented a fair and complete summary of the relevant facts" in the case.

[5]Clerk's Papers app. A, at 19-20.

[6]Clerk's Papers app. A, at 23-26.

[7]*Anders v. California*, 386 U.S. 738, 18 L. Ed. 2d 493, 87 S. Ct. 1396 (1967).

[8]*State v. Summers*, cause 5219-I (Aug. 3, 1978).

Officer Verner O'Quinn and Sergeant Jay Daniel Miller of the Seattle Police Department were executing a narcotics search warrant at 1300 29th Avenue South in Seattle. The officers found petitioner inside the house and advised him of his rights. Petitioner then informed them of the location in the house of a rifle and a handgun, both of which he claimed belonged to his girlfriend. He told the officers he had handled the handgun and that his fingerprints might be on it.[9]

Petitioner Summers was later charged by information filed in the King County Superior Court on February 27, 1989, with violating the Uniform Controlled Substances Act by the unlawful possession of cocaine "on or about October 14, 1988".[10] On June 22, 1989, an amended information was filed charging him with violation of the Uniform Firearms Act by unlawful possession of a .45-caliber pistol with a prior felony conviction of a crime of violence, and with violation of the Uniform Controlled Substances Act by unlawful possession of cocaine with intent to manufacture or deliver.[11]

On July 13, 1989, petitioner filed a motion to dismiss the Uniform Firearms Act violation.[12] The matter was heard before the Honorable Anne L. Ellington. In that motion, petitioner argued that the charge should be dismissed because his 1976 predicate conviction was unconstitutional by reason of alleged errors in jury instructions.[13] In denying the motion, the trial court stated that:

> The Court of Appeals had the full record. That's the proper basis for a determination of constitutional invalidity as to the original verdict. This court is not in a position to examine a verdict merely by looking at instructions which were given and be able to determine from their face that they are not constitutionally adequate for the case in which they were

---

[9]*State v. Summers*, 63 Wn. App. 923, 925, 821 P.2d 56 (1991).

[10]Clerk's Papers, at 1.

[11]Clerk's Papers, at 14-15.

[12]Clerk's Papers, at 24-28.

[13]Clerk's Papers, at 25.

given, and it seems to me that the clear policy which should form the decision of the court is that the jury's verdict, particularly after final affirmance on a final appeal, is established as a constitutionally valid prior conviction.

I think that the procedure followed here by Mr. Ellis was appropriate because this is a question of law for the court, not a question of fact for the jury, and it is appropriate to raise this matter for the court, but it seems to me that sound policy requires finality even on constitutional questions, and that was achieved when the Court of Appeals issued its opinion and no further review was sought.

So, I reach the conclusion that a jury verdict which is up held [sic] on final appeal is conclusive evidence of a constitutionally valid prior conviction. Motion to dismiss is denied.[14]

On July 19, 1989, the jury found Petitioner Summers guilty of the crime of possession of cocaine with intent to deliver.[15] On July 19, 1989, petitioner waived his right to trial by jury on the charge of violation of the Uniform Firearms Act.[16] On July 20, 1989, Judge Ellington after a hearing found Petitioner Summers guilty of the Uniform Firearms Act violation. She also found him guilty, upon the jury verdict, of possession of cocaine in violation of the Uniform Controlled Substances Act.[17] He was sentenced to 8 months' confinement for violation of the Uniform Firearms Act and 24 months' confinement for violation of the Uniform Controlled Substances Act,[18] the sentences to be served concurrently.[19] Additionally, the court imposed a 1-year term of community placement for both convictions.

On October 19, 1989, Petitioner Summers filed a notice of appeal to the Court of Appeals, Division One. On March 1, 1990, he filed a motion for continuance in anticipation of his

[14]Report of Proceedings, at 342-43.

[15]Clerk's Papers, at 84.

[16]Clerk's Papers, at 85.

[17]Clerk's Papers, at 113-15.

[18]Clerk's Papers, at 113-15.

[19]Clerk's Papers, at 115.

intent to file a personal restraint petition related to his appeal.[20] On March 7, 1990, the Clerk of the Court of Appeals, Division One, granted the motion for continuance. On March 21, 1990, petitioner filed a personal restraint petition in the Court of Appeals, Division One. On April 23, 1990, he filed a motion to consolidate his appeal with the personal restraint petition previously filed.[21]

On July 9, 1990, the State of Washington (State) filed a motion for extension of time to file respondent's brief. The motion was granted on that same date.[22]

On October 14, 1991, the Court of Appeals, Division One, filed its opinion affirming the judgment of the trial court and dismissing the personal restraint petition.[23] On October 19, 1991, petitioner filed a motion for reconsideration of the decision of the Court of Appeals.[24] On November 20, 1991, the court entered an order denying that motion.

On January 9, 1992, petitioner filed a petition for review before this court. We granted review on March 3, 1992.

DISCUSSION

On October 20, 1989, petitioner was convicted of violation of the Uniform Firearms Act, RCW 9.41.040,[25] upon a 1976 predicate conviction for a crime of violence, manslaughter in the first degree, committed in the state of Washington. Former RCW 9.41.040 provides that:

(1) A person is guilty of the crime of unlawful possession of a short firearm or pistol, if, having previously been convicted in this state or elsewhere of a crime of violence or of a felony

---

[20]Motion for Continuance (Mar. 1, 1990).

[21]Motion To Consolidate (Apr. 23, 1990).

[22]Motion for Extension of Time To File Respondent's Brief (July 9, 1990).

[23]*State v. Summers*, 63 Wn. App. 923, 926, 821 P.2d 56 (1991).

[24]Motion to Reconsider Decision (Oct. 19, 1991).

[25]Laws of 1935, ch. 172, § 4, *amended by* Laws of 1961, ch. 124, § 3; Laws of 1983, ch. 232, § 2; Laws of 1992, ch. 168, § 2; Laws of 1992, ch. 205, § 118.

in which a firearm was used or displayed, the person owns or has in his possession any short firearm or pistol.

. . . .

(3) As used in this section, a person has been "convicted" at such time as a plea of guilty has been accepted or a verdict of guilty has been filed, notwithstanding the pendency of any future proceedings including but not limited to sentencing, post-trial motions, and appeals. A person shall not be precluded from possession if the conviction has been the subject of a pardon, annulment, certificate of rehabilitation, or other equivalent procedure based on a finding of the rehabilitation of the person convicted or the conviction has been the subject of a pardon, annulment, or other equivalent procedure based on a finding of innocence.

At the time of his 1989 conviction, petitioner argued, as he does now, that that conviction was based on a constitutionally invalid predicate conviction — his 1976 conviction for manslaughter in the first degree. This argument rests on the asserted failure of the trial court to properly instruct the jury on the burden of proof relating to petitioner's claim of self-defense. In affirming the trial court and arriving at its conclusion in this case, the Court of Appeals stated that:[26]

[A]ppellant's 1976 conviction was not predicated upon an unconstitutionally obtained guilty plea. Indeed, appellant's only real challenge is that the failure to give an explicit burden of proof instruction concerning self-defense erroneously violated a rule of law that did not exist in Washington until at least 1977. Furthermore, appellant's 1976 conviction was reviewed on appeal and briefs were submitted after the decision in [State v.] Roberts[, 88 Wn.2d 337, 562 P.2d 1259 (1977)] had been issued, yet this issue was not raised in his appeal brief at that time. Therefore, even if the rule in Roberts as interpreted by [State v.] McCullum[, 98 Wn.2d 484, 656 P.2d 1064 (1983)] and [State v.] Acosta[27] could properly be applied retroactively to appellant's 1976 conviction, respect for the finality of decisions would cause us to reject appellant's challenge at this time as an invalid collateral attack on an issue that could have been previously raised and was not.

Respondent State argues that the Court of Appeals correctly held that State v. McCullum[28] should not be applied

---

[26]State v. Summers, supra at 930.

[27]101 Wn.2d 612, 683 P.2d 1069 (1984).

[28]98 Wn.2d 484, 656 P.2d 1064 (1983).

retroactively to petitioner's 1976 conviction for manslaughter because it is a new rule, that is, "it breaks new ground or imposes a new obligation on the States or the Federal Government", citing *Teague v. Lane.*[29] The State argues, in the alternative, that the new rule "was not dictated by precedent existing at the time the defendant's conviction became final."[30] The State also contends that petitioner is not entitled to relief because he "cannot show actual and substantial prejudice or a fundamental defect in proceedings to justify relief from personal restraint."[31] The State asserts that petitioner "received the benefit of his self-defense theory of the case when the jury found him guilty of manslaughter rather than Murder in the Second Degree."[32]

In answering the question in this case, we must consider four additional factors: (1) when the constitutionality of a predicate conviction, upheld on appeal, may be challenged; (2) when a decision is final under RCW 9.41.040; (3) when retroactive application is appropriate; and (4) when a prior conviction is invalid because of an erroneous instruction on self-defense.

## 1. Predicate Conviction

At the outset, we must determine whether petitioner may now challenge the constitutional validity of his 1976 manslaughter conviction, which was affirmed by the Court of Appeals in an unpublished opinion filed August 3, 1978.

The Court of Appeals in its opinion in the case now before us said that *State v. Swindell*[33] and *State v. Gore*[34] permit a "collateral attack" on the prior conviction, but that these

---

[29]489 U.S. 288, 301, 103 L. Ed. 2d 334, 109 S. Ct. 1068 (1989).

[30](Italics omitted.) 489 U.S. at 301.

[31]Supplemental Brief of Respondent, at 13.

[32]Supplemental Brief of Respondent, at 13.

[33]93 Wn.2d 192, 607 P.2d 852 (1980).

[34]101 Wn.2d 481, 681 P.2d 227, 39 A.L.R.4th 975 (1984).

holdings are "fact specific and do not support a collateral challenge in the present case."[35] That is not an accurate interpretation of *Swindell* and *Gore*.

A challenge to the constitutional validity of a predicate conviction which serves as an essential element of a charge for violation of the Uniform Firearms Act is not a "collateral attack" on the prior conviction. As stated in *Swindell*, such a challenge is "not an attempt to invalidate the previous judgment, as would be the case in a direct appeal or personal restraint petition. Rather, defendant seeks to foreclose the *prior* conviction's *present* use to establish an essential element of RCW 9.41.040, *i.e.*, a constitutionally valid conviction for a 'crime of violence'."[36] This court concluded that petitioner Swindell could challenge a constitutionally invalid guilty plea used to support the State's allegation of conviction of a previous crime of violence.

In *Swindell*, the petitioner was convicted of carrying a concealed weapon and was subsequently charged with violation of the Uniform Firearms Act. The Court of Appeals reversed the conviction. This court affirmed the Court of Appeals. Petitioner Swindell argued that his assault conviction could not be used to support a conviction under RCW 9.41.040 upon his plea of "guilty" because that plea was made involuntarily. The State argued that the defendant could not challenge the 1969 conviction, he having failed to do so either by direct appeal or by a petition for postconviction relief. The challenge raised two issues: first, on a charge alleging violation of RCW 9.41.040, whether a defendant can challenge the present use of a prior conviction of a crime of violence on the ground that the underlying guilty plea was allegedly made involuntarily; and second, if such a challenge is permissible, who has the burden of proving the constitutional validity or invalidity of the guilty plea.

---

[35]*Summers,* at 929-30.

[36]93 Wn.2d at 196; *see also State v. Holsworth,* 93 Wn.2d 148, 154, 607 P.2d 845 (1980).

The court observed that *Swindell* was indistinguishable from the case of *State v. Holsworth,*[37] noting that:

> In *Holsworth,* we . . . held that once a defendant charged under RCW 9.92.090 calls attention to the alleged unconstitutionality of a prior felony conviction used by the State to support a habitual criminal charge, the State must thereafter prove beyond a reasonable doubt that the prior conviction was constitutionally valid. The considerations determinative of one's right to challenge prior guilty pleas in the habitual criminal context are also present in the instant case. The existence of a constitutionally valid conviction for a 'crime of violence' is an element the State must prove beyond a reasonable doubt under RCW 9.41.040. . . . Accordingly, we hold that once a defendant calls attention to the alleged unconstitutionality of a plea of guilty to a prior 'crime of violence' sought to be used by the State to support a charge under RCW 9.41.040, the State must prove beyond a reasonable doubt, that the plea was made voluntarily.[38]

In *State v. Gore,*[39] the petitioner, previously convicted of second degree burglary, was charged with possession of a pistol. The burglary conviction was then on appeal and was later reversed. Petitioner was convicted in the trial court, but reserved the right to appeal if the burglary conviction was reversed on appeal. The Court of Appeals held that the later reversal of the burglary conviction did not affect the culpability of the possession and affirmed the judgment. This court reversed the Court of Appeals, holding that reversal of the underlying burglary conviction invalidated the possession conviction.

■ *Swindell* and *Gore* are factually distinguishable from the case now before us. *Swindell* was based on a plea of guilty and *Gore* was based on a conviction later reversed on appeal. In contrast, Petitioner Summers' 1976 conviction was affirmed by the Court of Appeals in 1978 and he did not seek further review. Nevertheless, these differences in the posture of the predicate convictions are immaterial to a

---

[37]93 Wn.2d 148, 607 P.2d 845 (1980).

[38]*Swindell,* at 196-97.

[39]101 Wn.2d 481, 681 P.2d 227, 39 A.L.R.4th 975 (1984).

determination of Petitioner Summers' right to challenge his manslaughter conviction. *Swindell* and *Gore* establish two rules that apply in any prosecution for violation of the Uniform Firearms Act. First, a defendant may raise a defense to such a prosecution by alleging the constitutional invalidity of a predicate conviction, and second, upon doing so, the State must prove beyond a reasonable doubt that the predicate conviction is constitutionally sound.[40] In raising this defense, the defendant bears the initial burden of offering a colorable, fact-specific argument supporting the claim of constitutional error in the prior conviction. Only after the defendant has made this initial showing does the State's burden arise.

We hold that petitioner may challenge his 1976 predicate conviction for manslaughter even though that conviction was upon a jury verdict and was affirmed on appeal. Original appellate review will normally satisfy a defendant's challenge to constitutional infirmities. But where, as here, a question is raised concerning the retroactive effect of a new rule of constitutional magnitude, prior appellate review should not stand as an absolute bar to the challenge.

It follows, then, that this court must now consider whether the original appellate review of petitioner's 1976 manslaughter conviction and the 1978 decision constitute proof of the constitutional validity of that conviction beyond a reasonable doubt. This requires an evaluation of the issues raised in that appeal and the law as it existed at the time of the appellate review, and of any subsequent changes in the constitutional requirements for criminal prosecutions which are alleged by the petitioner to have retroactive effect on the validity of the predicate conviction.

In its 1978 unpublished opinion affirming petitioner's manslaughter conviction, the Court of Appeals identified the issue on appeal as whether "the requirements of *Anders v. California* and *State v. Theobald*[, 78 Wn.2d 184, 470 P.2d 188 (1970)] [have] been met so as to require affirmance and

---

[40]*Swindell*, at 197; *Gore*, at 486.

allow the withdrawal of counsel on appeal."[41] The opinion briefly discussed the question whether "the trial court erred in instructing the jury on self-defense and in refusing [Mr. Summers'] requested instructions."[42] The court rejected this argument, finding that "a thorough reading of the trial court's instructions reveals that every aspect of the defendant's proposed instructions was covered in the court's charge to the jury."[43] Actually, the record indicates that Mr. Summers did not request an instruction on the burden of proof in a claim of self-defense. *State v. Roberts*[44] had not yet been decided. The issue of burden of proof was not before the Court of Appeals when it considered the adequacy of the instructions given at trial. It also appears that the Court of Appeals did not consider retroactive application of the then newly announced rule in *Roberts* to the jury instructions in that case.

We conclude that the issue of proper allocation of the burden of proof for a claim of self-defense was not considered by the Court of Appeals in 1978. Petitioner Summers may therefore now raise this issue in challenging the constitutionality of his 1976 conviction for manslaughter as a predicate conviction in his 1989 prosecution for violation of the Uniform Firearms Act.

### 2. Finality of Decisions

Both the trial court and the Court of Appeals rejected petitioner's challenge to the constitutional validity of his 1976 conviction on the basis of finality.[45] Petitioner argues that his conviction was not yet final within the context of the Supreme Court's definition of "final" as it applies to

---

[41]*State v. Summers*, cause 5219-I (Aug. 3, 1978), slip op. at 1.

[42]*Summers*, slip op. at 2.

[43]*Summers*, slip op. at 3 (quoting Mr. Summers' court-appointed counsel).

[44]88 Wn.2d 337, 562 P.2d 1259 (1977).

[45]Report of Proceedings, at 342-43; *State v. Summers*, 63 Wn. App. at 930.

retroactivity analysis. He thus seeks retroactive application of *State v. Roberts.*[46]

This court in *In re St. Pierre*[47] recently explained the rules governing finality of decisions. In *St. Pierre,* the petitioner sought retroactive application of *State v. Irizarry*[48] in which this court concluded that felony murder is not an included offense under aggravated first degree murder and that the trial court's instruction treating it as such was prejudicial error requiring a new trial.

■ After the decision in *Irizarry,* Petitioner St. Pierre filed a personal restraint petition seeking retroactive application of *Irizarry* to his case. The Court of Appeals dismissed the petition, stating that the conviction was final as to the trial court's instruction treating felony murder as an included offense when *Irizarry* was decided and that Mr. St. Pierre failed to satisfy the requirements for collateral attack on his conviction. This court, in articulating a definition of finality, stated that:

> The [United States] Supreme Court defines "final" for the purposes of retroactivity analysis as follows:
>> By "final," we mean a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied.
>
> . . . .
> We interpret the Supreme Court's language to contemplate the finality of the case as a whole, not the finality of a single issue. We reject any notion an issue may become final for the purposes of retroactivity analysis before the finality of the case as a whole. . . . Since this court announced the rule in *Irizarry* 8 days before denying petitioner's motion for reconsideration, petitioner's conviction was not yet final and he is entitled to retroactive application of the rule.[49]

---

[46]88 Wn.2d 337, 562 P.2d 1259 (1977).

[47]118 Wn.2d 321, 823 P.2d 492 (1992).

[48]111 Wn.2d 591, 763 P.2d 432 (1988).

[49](Citations omitted.) *St. Pierre,* at 327 (citing *Griffith v. Kentucky,* 479 U.S. 314, 321, 93 L. Ed. 2d 649, 107 S. Ct. 708 (1987)).

*State v. Roberts, supra,*[50] was decided on February 24, 1977, more than a year before petitioner's case was decided by the Court of Appeals on August 3, 1978. Because "final" means exhaustion of appeal of a judgment of conviction and elapse of the time for a petition for certiorari or denial of that petition, Petitioner Summers' case was not final under *St. Pierre.*

Indeed, the Court of Appeals cited *State v. Roberts, supra,* in rejecting a claim concerning impermissible evidentiary presumptions contained in jury instructions.[51] The Court of Appeals did not, however, cite *Roberts* in its consideration of petitioner's challenge to the jury instructions on self-defense. In retrospect, it appears that the relevance of the holding in *Roberts* to Mr. Summers' case was not considered by that court. In any event, finality does not bar Mr. Summers' challenge in this case.

### 3. Retroactive Application

The Court of Appeals did not conduct an analysis of Petitioner Summers' predicate manslaughter conviction, but merely noted that the rule in *Roberts* was not announced until 1977, which it determined was "a year after appellant's conviction."[52] The Court of Appeals then stated that a "finding of error would thus require a retroactive application of this line of cases, which we decline to do."[53]

In *In re St. Pierre,*[54] this court articulated a 2-part standard to be applied in retroactivity analysis:

> 1. A new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending

---

[50]*State v. Roberts, supra,* which announced the rule relating to the burden of proof on self-defense, was decided on February 24, 1977. The Court of Appeals' decision in Petitioner Summers' case was filed on August 3, 1978.

[51]*State v. Summers,* cause 5219-I (Aug. 3, 1978), slip op. at 3.

[52]*State v. Summers,* 63 Wn. App. 923, 926, 821 P.2d 56 (1991).

[53]*Summers,* at 926.

[54]118 Wn.2d 321, 326, 823 P.2d 492 (1992).

on direct review or not yet final, with no exception for cases in which the new rule constitutes a clear break from the past.

2. A new rule will not be given retroactive application to cases on collateral review except where either: (a) the new rule places certain kinds of primary, private individual conduct beyond the power of the state to proscribe, or (b) the rule requires the observance of procedures implicit in the concept of ordered liberty.

(Citations omitted.)

The court then stated that:

> The Court's past pronouncements as to rules which are a clear break with the past and rules implicating the truth-finding function are no longer applicable.[55]

The "critical issue" in retroactivity analysis is "whether the case was final when the new rule was announced."[56] This court in *St. Pierre* discussed "finality" as it relates to retroactivity analysis and rejected "any notion an issue may become final for the purposes of retroactivity analysis before the finality of the case as a whole."[57]

This court's decision in *Roberts* would be retroactive even if Petitioner Summers' case had been final under *Griffith v. Kentucky*[58] and *St. Pierre*. This is true notwithstanding the language of RCW 9.41.040(3) under the Uniform Firearms Act.

In *In re Lile*,[59] the petitioner sought relief from personal restraint, claiming errors of constitutional magnitude occurring in his trial for first degree murder. This court held that failure to properly instruct the jury on the presumption of innocence and burden of proof applicable to self-defense was an error of constitutional magnitude. Finding that the petitioner had met the burden of proving the prejudicial effect

---

[55] 118 Wn.2d at 326.

[56] 118 Wn.2d at 327.

[57] 118 Wn.2d at 327.

[58] 479 U.S. 314, 321, 93 L. Ed. 2d 649, 107 S. Ct. 708 (1987).

[59] 100 Wn.2d 224, 668 P.2d 581 (1983).

of the error, this court granted the petition and remanded the case for a new trial. The court explained that:

> The State argues that *Roberts* is inapplicable here because petitioner was tried almost 2 years before that decision. Our holding in *Roberts*, however, was required under *Mullaney v. Wilbur*[, 421 U.S. 684 (1975)] and *In re Winship*[, 397 U.S. 358 (1970)]. The Court in those cases basically held that the due process clause of the Fourteenth Amendment required that the State persuade the jury beyond a reasonable doubt as to all elements of the crime charged. In *Roberts* we merely applied the principles of those cases to our interpretation of the old criminal code concluding that the instruction given was unconstitutional. The United States Supreme Court recently reaffirmed the principle that if a case merely applies settled precedents to new and different factual situations, the rule of that case applies to earlier cases because the later decision has not altered the rule in any material way. Thus, because we merely applied the principles of *Mullaney* and *Winship* (both decided prior to petitioner's trial) to a new factual situation in *Roberts,* the rule of *Roberts* controls in this case. Accordingly, it was error to give an instruction requiring petitioner to prove he acted in self-defense.[60]

The court in *Lile* applied the principles of *Mullaney v. Wilbur*[61] and *In re Winship*,[62] both decided before Petitioner Lile's and Petitioner Summers' cases, to a new factual situation in *Roberts*. The rule of *Roberts* controlled in *Lile*. The facts in Petitioner Summers' case are somewhat analogous to the facts in *Lile*, in which the defendant sought retroactive application of the *Roberts* rule to invalidate a homicide conviction based on an improper jury instruction on self-defense. Because of these similarities, we conclude that the rule announced in *Roberts* in 1977 applies in this case.[63]

### 4. Burden of Self-Defense

We now analyze the effect of *Roberts* on the validity of petitioner's conviction for manslaughter.

---

[60](Footnote and citations omitted.) 100 Wn.2d at 226-27.

[61]421 U.S. 684, 44 L. Ed. 2d 508, 95 S. Ct. 1881 (1975).

[62]397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970).

[63]88 Wn.2d 337, 562 P.2d 1259 (1977).

■ In *Roberts,* the petitioner was convicted of and sentenced for second degree murder. He excepted to instructions on permissible presumptions of intent and the burden of proving self-defense. This court reversed the trial court and held that the burden of proving the absence of self-defense remains upon the prosecution and not upon the party asserting it. This court in *Roberts* stated that:

> Inasmuch as this case must be remanded for a new trial, appellant's argument challenging the constitutionality of the trial court's instruction on self-defense must be considered. . . . In view of the decisions in *Mullaney* and *[State v.] Kroll,*[64] it is now only permissible to place upon the defendant the obligation to produce evidence, from whatever source, tending to establish self-defense. The obligation to prove the absence of self-defense must remain at all times with the prosecution. . . .
>
> This decision should not prove unduly burdensome to the prosecution. . . . The jury should be instructed as to the pertinent aspects of the law of justification in homicide cases and then simply informed that the State has the burden to prove absence of self-defense beyond a reasonable doubt.[65]

*State v. McCullum, supra,* in 1983 decided the issue whether in a first degree murder case the State must disprove self-defense when the issue is properly raised. This court stated that it found "nothing in the new statutory scheme to indicate the Legislature reallocated the burden of proof with respect to self-defense."[66] The court reasoned that:

> In construing legislation, we presume the Legislature is familiar with past judicial interpretations of its enactments. In the absence of an indication from the Legislature that it intended to overrule the common law, new legislation will be presumed to be in line with prior judicial decisions in a field of law. . . . By choosing not to employ similar language setting out the burden of proof as to self-defense, the Legislature indicated the continuing validity of the existing law on self-defense burdens of proof. Under the rule of *State v. Roberts,* the prosecution bears the burden of proving beyond a reasonable doubt the

---

[64] 87 Wn.2d 829, 558 P.2d 173 (1976).

[65] *Roberts,* at 345-46.

[66] *State v. McCullum,* 98 Wn.2d 484, 492, 656 P.2d 1064 (1983).

absence of self-defense. This construction of the new code is entirely consistent with the surrounding statutory scheme.[67]

Offering some guidance on self-defense instructions, this court in *McCullum* observed:

> As stated previously, there need only be some evidence, admitted in the case from whatever source to raise the issue of self-defense. Once the issue is properly raised, the jury should be instructed as to the definition and elements of self-defense. The jury then should be instructed that the State bears the burden of proving the absence of self-defense beyond a reasonable doubt. . . . Finally, the jury should be informed that the State sustains its burden of proof as to the absence of self-defense if it proves, beyond a reasonable doubt, each of the elements of the crime as defined by the applicable statute.[68]

In *State v. Acosta*,[69] reversing a conviction for second degree assault, this court further discussed the burden of proof in self-defense jury instructions. The court observed that:

> The jury should be informed in some unambiguous way that the State must prove absence of self-defense beyond a reasonable doubt. The defendant is entitled to a correct statement of the law, and should not be forced "*to argue* to the jury that the State [bears] the burden of proving absence of self-defense." Rather, the defense attorney is only required to argue to the jury that the facts fit the law; the attorney should not have to convince the jury what the law is. . . . [70]

The court in *Acosta* noted that "failure to provide [a specific instruction] is not reversible *per se* so long as the instructions, taken as a whole, make it clear that the State has the burden."[71] That was not the case in Petitioner Summers' 1976 trial.

---

[67](Citations omitted.) *McCullum*, at 492-93.

[68](Citations omitted.) *McCullum*, at 500.

[69]101 Wn.2d 612, 683 P.2d 1069 (1984).

[70](Citation omitted.) 101 Wn.2d at 621-22.

[71]101 Wn.2d at 621.

At petitioner's 1976 trial, the Honorable Frank J. Eberharter instructed the jury that in order to convict the defendant of first degree manslaughter, it must find (1) that the defendant stabbed the victim, (2) that the defendant's conduct was reckless, (3) that the victim died as a result of the defendant's acts, and (4) that the acts occurred in King County.[72] The court also instructed the jury on self-defense,[73] but the instructions did not indicate whether the State or the defendant bore the burden of proof for self-defense. The court's principal instruction on self-defense read in its entirety:

> An assault may be justified if used in defense of the person of the perpetrator when there is imminent danger that his adversary may injure him unless prevented. When attacked, one has the right to defend himself, to resist force with force, to the extent of what then appears to be the apparent danger to the one attacked. The right of self-defense is given only in emergencies to enable persons who are attacked, and to whom it may reasonably appear that their lives are endangered or their bodies are in danger of physical injury, to defend themselves. The right is limited to the emergency, and ends when the emergency ceases. This right is based upon what a reasonable man, having due regard for human life and safety, would do under similar circumstances.
>
> An assault is not justified when made for the purpose of avenging insults, abuse or a previous assault which has ended, or for the purpose of settling an argument not involving physical safety.
>
> No one is justified in using a dangerous weapon in self-defense against a simple assault with hands or fists, unless the one assaulted has reasonable cause to believe that he is at that moment in danger of losing his life or of suffering great bodily injury at the hands of his adversary.[74]

Additionally, the court instructed the jury that:

> It is for you to determine whether or not the defendant had reasonable ground to apprehend imminent death or grievous bodily harm, and in deciding that question you should judge from the defendant's standpoint at the time of the occurrence; that is to say, you should take into consideration all the facts

---

[72]Clerk's Papers app. A, at 26.

[73]Clerk's Papers app. A, at 30.

[74]Clerk's Papers app. A, at 30.

and circumstances bearing on the question and surrounding defendant and existing at or prior to the time of the occurrence, as said facts and circumstances are disclosed by the evidence.[75]

In closing argument petitioner's attorney made the following comments on self-defense:

*The burden is not on Mr. Summers to prove that he acted in self defense.* Mr. Summers has no burden at all, no obligation to do anything in a criminal case and in this case specifically. He doesn't have to prove anything to you. *The prosecutor must prove beyond a reasonable doubt that Mr. Summers did not act in self defense.* . . . [Y]ou can come to no other conclusion than that Mr. Summers acted in self defense in this barroom brawl. Bear in mind, however, it is not his burden. There is no obligation on him to prove that to you. The prosecutor must prove to you that he did not act in self defense. If you're not satisfied that he's proved that to you, then you must find Mr. Summers not guilty.[76]

In contrast, the prosecuting attorney made the following statement about self-defense in rebuttal argument to the jury:

I think Mr. Olson, both in his voir dire and opening remarks and also in his closing remarks here, has said that on several occasions the burden is on the State to prove that Mr. Summers did not act in self defense. *When you take the instructions that Judge Eberharter has instructed you as the law for this case, read the to convict instruction and look and see if at any place in the to convict there is a statement or element that the State must prove beyond a reasonable doubt that Mr. Summers did not act in self defense. It is not there.* What the State must prove to you beyond a reasonable doubt and which must be proved before Mr. Summers is guilty, is the elements that are contained in those to convict instructions.[77]

The jury in the 1976 case convicted Petitioner Summers of the lesser offense of first degree manslaughter and acquitted him of the assault charge. In the case now before us, we conclude that only a constitutionally valid conviction of Peti-

---

[75]Clerk's Papers app. A, at 31.

[76](Italics ours.) Clerk's Papers app. C, at 177, 190.

[77](Italics ours.) Clerk's Papers app. C, at 192.

tioner Summers could serve as the predicate conviction for the charge of violation of the Uniform Firearms Act because a proper self-defense instruction might have made a difference in the jury's verdict in the 1976 case. The State must prove beyond a reasonable doubt that there existed a constitutionally valid conviction for a "crime of violence" as an element of RCW 9.41.040.[78] This the State has not done.

## CONCLUSION

We reverse the Court of Appeals and set aside Petitioner Arthur Hinton Summers' 1989 conviction for violation of the Uniform Firearms Act, RCW 9.41.040. The decision of the Court of Appeals expressly conflicts with this court's recent decision in *In re St. Pierre, supra,* and with this court's decision in *In re Lile, supra,* which explicitly state that *State v. Roberts, supra,* should be applied retroactively.

UTTER, BRACHTENBACH, DOLLIVER, DURHAM, GUY, and JOHNSON, JJ., concur.

---

[78]*State v. Swindell*, 93 Wn.2d 192, 607 P.2d 852 (1980).