# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| In the Matter of the Personal Restraint Petition of: | No.  51440-1-II |
| WILLIAM CHARLES HORTON, JR., | UNPUBLISHED OPINION |
| Petitioner. | |

GLASGOW, J. — After a night of partying, William Charles Horton Jr. and Charles Pitts ended up at the same apartment with a group of friends.  Horton and Pitts argued and Horton shot Pitts multiple times.  He then dragged Pitts into the street outside the apartment.  Police found Horton standing over Pitts's body with the gun, still shouting at him.  Horton admitted to shooting Pitts, but unsuccessfully claimed self-defense.  Horton now seeks relief from personal restraint following his convictions of first degree murder with firearm and criminal street gang sentence enhancements, as well as first degree unlawful possession of a firearm.

Horton contends that the trial court's to-convict jury instruction for first degree murder failed to include all the essential elements of the offense, the State failed to present sufficient evidence to support the criminal street gang sentence enhancement, and the trial court improperly coerced the jury's verdicts by giving a jury instruction concerning its deliberations.

Horton also contends that his trial counsel was ineffective on several grounds and that his appellate counsel was ineffective for failing to assign error to the trial court's first degree murder to-convict jury instruction. We deny Horton's petition.

FACTS

Horton and a group of friends were drinking alcohol and having a barbeque at Baron Johnson's apartment before leaving for a night club. *See State v. Horton*, 195 Wn. App. 202, 208, 380 P.3d 608 (2016), *review denied*, 187 Wn.2d 1003 (2017). The group continued drinking at the night club until around 1:30 a.m., when they returned to Johnson's apartment. *Id*. Pitts arrived at the apartment shortly after the group returned. *Id*. Horton and Pitts were both intoxicated. *Id.*

Witnesses at the gathering saw that Horton and Pitts were arguing and "smack talking." *Id*. Witnesses also saw the men slap boxing with each other and thought Pitts was getting "the better hand" over Horton. *Id*. Eventually, everyone other than Horton, Pitts, and Johnson left the apartment. *Id.* at 209. While Johnson was in his bedroom, he heard a gunshot. *Id*. He ran into the living room and saw smoke coming from Pitts's abdomen. *Id*. Johnson heard Horton say "[y]ou can't do nothing to me now. You're dead," before seeing Horton shoot Pitts three more times. *Id*. Horton dragged Pitts's body outside to the parking lot. *Id*. When police arrived, they saw Horton standing over Pitts's body while holding a handgun and yelling, "I'm going to kill you, [expletive]." *Id*. at 206.

Horton denied slap boxing with Pitts. *Id.* at 209. Horton said that Pitts repeatedly called him "cuz," and confronted him about wearing certain colored clothing in his neighborhood. *Id.* Horton explained that Pitts hit him and that he believed Pitts would kill him. *Id.* Horton claimed

that a week before his confrontation with Pitts, he had seen Pitts beat another person up to the point where the other person's "face looked like a punkin." *Id.*

The State charged Horton with first degree murder and first degree unlawful possession of a firearm based on the allegation that he shot and killed Pitts. *Id.* at 206-10. The State also alleged a firearm sentence enhancement for the first degree murder charge and a criminal street gang sentence enhancement for both charges. *Id.* at 210.

The State claimed Horton could not lawfully possess a firearm because in 1994, Horton pleaded guilty to armed robbery in Florida. *Id.* at 211-12, 222. The court in the 1994 case entered a withheld adjudication for the offense. *Id.* at 222. Under Florida law, a trial court has discretion to enter a withheld adjudication if it finds that the defendant is not likely to again "'engage in a criminal course of conduct and that the ends of justice and the welfare of society do not require that the defendant presently suffer the penalty imposed by law.'" *Id.* at 212, n.9 (quoting FLA. STAT. ANN. § 948.01(2)). The State's positon was that the Florida guilty plea amounted to a "conviction" for purposes of serving as a predicate offense for unlawful possession of a firearm under Washington law. *Id.* at 211, 220-22.

At Horton's first trial, the jury returned a verdict finding him guilty of first degree unlawful possession of a firearm but could not reach a verdict on the first degree murder charge. *Id.* at 213. The jury also did not return an answer on the special verdict form for the gang aggravator. *Id.*

The State retried Horton on the first degree murder charge. *Id.* At the second trial, Sean Conlon, a gang investigator with the special operations unit of the Lakewood Police Department, provided expert gang testimony. Conlon testified that Horton had several tattoos that were

3

indicative of his membership in the Gangster Disciples gang. Conlon explained that a Crip gang member calling a Gangster Disciples member "cuz" would be perceived as a term of disrespect. Verbatim Report of Proceedings (VRP) at 1191. Respect is significant for members of a gang in part because of safety concerns; if a member of a gang is disrespected and does not retaliate, the gang may be perceived as "easy prey." VRP at 1222-25. If a Gangster Disciples member did not retaliate after being disrespected, it would negatively affect both the gang's reputation and the member's status within the gang. Conlon said that, in contrast, a Gangster Disciples member's retaliation to disrespect would increase both the gang's reputation and the member's status within the gang. If a Gangster Disciple member took another person's life, it would "bring him up to elite status." VRP at 1315.

Horton admitted that he was a former member of the Gangster Disciples but claimed that he stopped considering himself a member in 2000. Horton also admitted that several of his tattoos related to his former membership with the Gangster Disciples. Pitts told Horton that he was a member of the Crips, and Horton said that he interpreted Pitts's use of the term "cuz" as a threat, despite his insistence that he was no longer in the Gangster Disciples. VRP at 1482.

Lakewood Police Officer Mark Holthaus testified that Horton was placed in his patrol car following his arrest. Holthaus reported that immediately after Horton was placed in the car, Horton spontaneously said that Pitts "was part of the Hilltop Crips and that's what did it." VRP at 355.

The trial court provided to the jury a first degree murder to-convict jury instruction modeled after Washington Pattern Jury Instruction: Criminal 26.02 (WPIC). Horton did not object to this instruction. The trial court also provided a jury instruction modeled after WPIC

1.04, which explained to jurors that they must deliberate to reach a unanimous verdict. The instruction also said that jurors should decide the case for themselves but should not hesitate to reexamine their own views when evaluating the evidence in the courts of jury discussions. Nevertheless, a juror should not abandon their own view solely to reach a verdict. Horton did not object to this instruction either.

The jury returned a verdict finding Horton guilty of first degree murder. *Horton*, 195 Wn. App. at 213-14. The jury also returned special verdicts finding that the State proved the firearm and criminal street gang sentence enhancements. *Id.* at 214. The trial court entered findings of fact and conclusions of law supporting an exceptional sentence of 481 months of confinement and 36 months of community custody for the murder conviction based on the jury's finding that Horton committed the crime with intent to benefit a criminal street gang. *Id.* We affirmed both of Horton's convictions on direct appeal. He then filed this timely personal restraint petition.

## ANALYSIS

### I. STANDARD OF REVIEW

To obtain relief through a personal restraint petition, Horton must show either constitutional error that resulted in actual and substantial prejudice or nonconstitutional error that resulted in a complete miscarriage of justice. *In re Pers. Restraint of Cook*, 114 Wn.2d 802, 810-13, 792 P.2d 506 (1990). Horton must also provide facts and evidence supporting his claim of unlawful restraint; he cannot rely solely on conclusory allegations. RAP 16.7(a)(2); *In re Pers. Restraint of Williams*, 111 Wn.2d 353, 365, 759 P.2d 436 (1988); *see also Cook*, 114 Wn.2d at 813-14. To meet this burden, Horton must show "that the 'factual allegations are based on more

than speculation, conjecture, or inadmissible hearsay.'" *In re Pers. Restraint of Monschke*, 160 Wn. App. 479, 489, 251 P.3d 884 (2010) (quoting *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086 (1992)).

## II. TO-CONVICT JURY INSTRUCTION

Horton first contends that the trial court's to-convict jury instruction for first degree murder relieved the State of its burden of proof by omitting essential elements of the offense. We disagree.[1]

We review a challenge to a jury instruction de novo. *State v. Pirtle*, 127 Wn.2d 628, 656, 904 P.2d 245 (1995). A to-convict jury instruction must contain all of the essential elements of a crime because it serves as a yardstick by which the jury measures the evidence to determine the defendant's guilt or innocence. *State v. Smith*, 131 Wn.2d 258, 263, 930 P.2d 917 (1997). The essential elements of the crime are those that the prosecution must prove to sustain a conviction. *State v. Peterson*, 168 Wn.2d 763, 772, 230 P.3d 588 (2010). To convict Horton of first degree murder as charged here, the State had the burden to prove beyond a reasonable doubt the essential elements that (1) with premeditated intent to cause the death of another person and (2) he caused the death of another person. RCW 9A.32.030(1)(a).

---

[1] As an initial matter, the State argues that Horton is procedurally barred from raising issues in a personal restraint petition that he could have raised on direct appeal, absent a showing that the interests of justice require examination of those issues. The State is incorrect. The interests of justice standard applies only to issues that were previously raised and rejected on their merits. *See In re Pers. Restraint of Stenson*, 142 Wn.2d 710, 719-20, 16 P.3d 1 (2001). The heightened standard that the State suggests does not apply to issues raised for the first time in a personal restraint petition even where those issues could have been brought on direct appeal. *See In re Pers. Restraint of Hews*, 99 Wn.2d 80, 85-87, 660 P.2d 263 (1983).

Horton does not claim that the trial court's to-convict jury instruction for first degree murder omitted these essential elements. Instead, Horton argues that the first degree murder to-convict instruction was also required to contain the elements of the alleged firearm and criminal street gang sentence enhancements. We disagree.

In his petition, Horton relied on *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002), and other cases holding that any fact that increases the maximum penalty must be submitted to the jury and proved beyond a reasonable doubt. Although the cases Horton cited in his petition established that a jury must find any facts required to prove a sentence enhancement, the cases he cited do not require that sentence enhancement elements must be included within the to-convict instruction describing the elements of the charged crime.

In *State v. Mills*, 154 Wn.2d 1, 10, 109 P.3d 415 (2005), our Supreme Court rejected the argument that *Apprendi* and *Ring* required sentencing "elements" that increase the penalty for a crime to be included in a to-convict jury instruction for the underlying crime. The *Mills* court specifically held that a trial court may, "consistent with the guaranties of due process and trial by jury," present to the jury the fact necessary to elevate the defendant's sentence in a special verdict form. *Id.* "So long as the jury is instructed it must unanimously agree beyond a reasonable doubt before it may affirmatively answer the special verdict, the constitution is not offended." *Id.*

Under *Mills*, "elements" of a sentencing enhancement need not be included within a to-convict jury instruction for the underlying crime. We hold that Horton has failed to show any error in his first degree murder to-convict jury instruction.

7

III. Evidence Supporting Criminal Street Gang Sentencing Enhancement

A.       Sufficiency of Evidence Supporting the Enhancement

Next, Horton contends that the State failed to present sufficient evidence to support the criminal street gang sentence enhancement. We disagree.

We review the sufficiency of evidence supporting a sentence enhancement in the same manner as we review the sufficiency of evidence supporting a conviction. *State v. Webb*, 162 Wn. App. 195, 205-06, 252 P.3d 424 (2011). Evidence is sufficient in either case if it permits any reasonable trier of fact to find the essential elements beyond a reasonable doubt when viewed in the light most favorable to the State. *State v. Condon*, 182 Wn.2d 307, 314, 343 P.3d 357 (2015). When evaluating sufficiency of the evidence, we assume the State's evidence is true and adopt reasonable inferences that a trier of fact could draw from that evidence. *Id*. Circumstantial evidence is no less reliable than direct evidence in this context. *State v. Ozuna*, 184 Wn.2d 238, 248, 359 P.3d 739 (2015). We "defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

Here the State alleged, and the jury found, that Horton committed first degree murder "with the intent to directly or indirectly cause any benefit, aggrandizement, gain, profit, or other advantage to or for a criminal street gang as defined in RCW 9.94A.030, its reputation, influence, or membership." Clerk's Papers (CP) at 1-2, 409; RCW 9.94A.535(3)(aa). Sufficient evidence supports this finding.

The evidence at trial, when viewed in a light most favorable to the State, showed that Horton was a member of the Gangster Disciples and Horton perceived Pitts to be a member of

the Hilltop Crips. Pitts repeatedly referred to Horton as "cuz," which is a term of disrespect when uttered by a member of the Crips to a member of the Gangster Disciples. VRP at 1191. A Gangster Disciple member's retaliation for disrespect would increase the reputation of the gang and the member's status within the gang. And after shooting and killing Pitts, Horton stated that Pitts "was part of the Hilltop Crips and that's what did it." VRP at 355. From this evidence, any reasonable jury could infer that Horton shot and killed Pitts with the intent to directly or indirectly benefit the reputation and influence of the Gangster Disciples or Horton's membership within the Gangster Disciples. Accordingly, we hold that sufficient evidence supports the criminal street gang sentence enhancement.

B.      Corpus Delicti and Facts Supporting Sentencing Enhancements

Horton additionally argues that the only evidence supporting a finding that he was associated with a criminal street gang came from his own admissions, which he claims were inadmissible to prove the sentence enhancement under the corpus delicti rule. Because the corpus delicti rule does not apply to sentence aggravators, only the underlying crime, we disagree.

Under the corpus delicti rule, a defendant's incriminating statements are not admissible unless the State first establishes the crime's corpus delicti by independent evidence. *State v. Brockob*, 159 Wn.2d 311, 328, 150 P.3d 59 (2006). The elements of corpus delicti for a homicide offense are (1) the fact of death and (2) a causal connection between the death and a criminal act. *State v. Aten*, 130 Wn.2d 640, 655, 927 P.2d 210 (1996).

In *State v. Finch*, 137 Wn.2d 792, 975 P.2d 967 (1999), our Supreme Court reviewed a challenge to the corpus delicti of an aggravated first degree murder conviction. The *Finch* court

first determined that the State had established the corpus delicti of homicide because evidence independent of the defendant's confession established prima facie evidence of the victim's death at the hands of the defendant. *Id.* at 838. The court then explained that once corpus delicti for the underlying charged crime has been established, the same corpus delicti serves as proof of the existence of the aggravator. *Id.* at 838-39.

Here, as in *Finch*, evidence independent of Horton's statements provided prima facie evidence to support the first degree murder charge. Johnson ran into his living room after hearing a gunshot, saw smoke coming out of Pitts's abdomen, and then saw Horton shoot Pitts three more times. *Horton*, 195 Wn. App. at 209. Because the State established the corpus delicti of first degree murder, Horton's statements could be used to prove any aggravators absent any further showing. Accordingly, Horton's corpus delicti argument fails. We affirm the criminal street gang sentence enhancement.

## IV. JURY DELIBERATION INSTRUCTION

Horton contends that the trial court improperly coerced the jury's verdicts by giving a jury instruction modeled after WPIC 1.04, which stated:

> As jurors, you have a duty to discuss the case with one another and to deliberate in an effort to reach a unanimous verdict. Each of you must decide the case for yourself, but only after you consider the evidence impartially with your fellow jurors. During your deliberations, you should not hesitate to re-examine your own views and to change your opinion based upon further review of the evidence and these instructions. You should not, however, surrender your honest belief about the value or significance of evidence solely because of the opinions of your fellow jurors. Nor should you change your mind just for the purpose of reaching a verdict.

CP at 431.

Horton does not cite any legal authority supporting his contention that it is improperly coercive for a trial court to instruct the jury in this manner before the jury begins its

deliberations. Instead, Horton relies on research showing that giving a similar instruction to a jury after it has become deadlocked could unduly pressure jurors to change their votes to agree with the majority.

It is well established that a trial court may properly provide a deliberation instruction based on WPIC 1.04 prior to the jury beginning its deliberations. *See, e.g.*, *State v. Lamar*, 180 Wn.2d 576, 580, 585, 327 P.3d 46 (2014) (approving instruction based on WPIC 1.04 when given prior to the start of deliberations); *see also State v. Sullivan*, 3 Wn. App. 2d 376, 379-80, 415 P.3d 1261 (2018) (discussing *Lamar*); *State v. Whiteman*, 23 Wn. App. 353, 356 n.3, 597 P.2d 398 (1979). Here, the trial court provided the challenged jury instruction before the jury began its deliberations. Accordingly, Horton's challenge to the trial court's jury instruction fails.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Next, Horton raises several claims of ineffective assistance of counsel at trial and on appeal. Specifically, Horton contends that his trial counsel was ineffective for failing to object to the first degree murder to-convict jury instruction, failing to challenge on corpus delicti grounds the use of Horton's statements about his gang affiliation, failing to object to the trial court's jury instruction regarding its deliberations, and failing to challenge Horton's prior out-of-state juvenile adjudication as a predicate offense for his first degree unlawful possession of a firearm charge. Horton also contends that his appellate counsel was ineffective for failing to assign error to the trial court's first degree murder to-convict jury instruction. On all contentions, we disagree.

Ineffective assistance of counsel is a constitutional error, arising from protections under the Sixth Amendment to the United States Constitution and article I, section 22 of the

Washington Constitution. *State v. Estes*, 188 Wn.2d 450, 457, 395 P.3d 1045 (2017). To prevail on his claim of ineffective assistance, Horton must show both that defense counsel's representation was deficient, in that it fell below an objective standard of reasonableness, and the deficient performance resulted in prejudice. *Id.* at 457-58. Prejudice ensues if there is a reasonable probability that the result of the proceeding would have been different had counsel not performed deficiently. *Id.* at 458. Because the ineffective assistance test already incorporates prejudice, if Horton demonstrates that his counsel rendered ineffective assistance, he necessarily establishes the "actual and substantial prejudice" standard for obtaining relief from a constitutional error through a personal restraint petition. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 846-47, 280 P.3d 1102 (2012).

A.      Trial Counsel

Horton's contentions regarding his trial counsel's failure to object to the trial court's first degree murder to-convict instruction, to raise a corpus delicti challenge to the admission of his statements about his gang affiliation, and to object to the jury deliberation instruction all rely on arguments that we have rejected above. Accordingly, Horton cannot demonstrate ineffective assistance on those grounds.

Horton also contends that his trial counsel was ineffective for failing to challenge the constitutionality of his prior Florida withheld adjudication for armed robbery, which served as the predicate offense for his unlawful possession of a firearm conviction. Under Florida law, a trial court has discretion to enter a withheld adjudication if it finds that the defendant is not likely to again "'engage in a criminal course of conduct and that the ends of justice and the welfare of society do not require that the defendant presently suffer the penalty imposed by law.'" *Horton*,

195 Wn. App. at 212, n.9 (quoting FLA. STAT. ANN. § 948.01(2)).  Florida does not consider a withheld adjudication as a conviction for purposes of its unlawful possession of a firearm statute. *Id.* at 221-22 (citing *Castillo v. State*, 590 So. 2d 458, 461 (Fla. Dist. Ct. App. 1991)).

In his direct appeal, Horton argued that the Florida withheld adjudication was not a conviction.  This court disagreed, holding instead that Horton's 1994 guilty plea to armed robbery, combined with his withheld adjudication for the offense, amounted to a "conviction" for purposes of serving as a predicate offense for unlawful possession of a firearm under Washington law.  *Id.* at 220-22.

Horton now asserts that his Florida counsel at the time told him that the Florida withheld adjudication would "not count as a conviction for any purpose."  PRP Attachment at 1.  He claims that he understood this to mean that he would not lose his right to carry a firearm "in Florida or anywhere."  PRP Attachment at 1.  He says that had he understood the true consequences, he would not have pleaded guilty.  Horton claims that his Florida plea was unknowing and therefore unconstitutional.

Horton did not argue on direct appeal that his Florida guilty plea was unconstitutional either on its face or because he had unknowingly entered his plea.  Our Supreme Court has held that Horton could have challenged the constitutionality of his prior Florida conviction at his Washington trial.  *State v. Summers*, 120 Wn.2d 801, 809-810, 846 P.2d 490 (1993).  Had he done so, the State would have then had the opportunity to prove beyond a reasonable doubt that the Florida conviction was constitutionally sound.  *Summers*, 120 Wn.2d at 812.  By failing to raise this issue in the Washington trial court, Horton deprived the State of its opportunity to develop the facts necessary to show the Florida conviction was constitutionally valid.

Horton may not now attempt to directly invalidate his prior Florida conviction in this petition because such a challenge is essentially a collateral attack on an out-of-state conviction, a claim he would need to bring in the Florida courts. *C.f.*, *State v. Ammons*, 105 Wn.2d 175, 188-89, 713 P.2d 719 (1986) (applying this reasoning to a challenge to a prior out-of-state conviction in the sentencing context). Here, he may only challenge the Washington trial court's *use* of the Florida conviction to establish an essential element of first degree unlawful possession of a firearm, not the predicate Florida conviction itself. *See Summers*, 120 Wn.2d at 810; *see also Ammons*, 105 Wn.2d at 188-89. And because he failed to raise this issue at the trial court, and he has not shown the Florida conviction is invalid on its face, our review is limited to whether Horton's defense counsel at the Washington trial was ineffective for failing to challenge the constitutionality of his Florida conviction under *Summers*.

In support of his argument, Horton does not, however, identify any evidence that his trial counsel was ever aware of the circumstances underlying his Florida guilty plea. Nor has Horton presented any evidence, other than his own statement, to support his claim about what his Florida attorney told him. He has not demonstrated that his Washington counsel performed deficiently by failing to raise this issue at trial.

Horton asserts in the alternative that he is entitled to a reference hearing to resolve any factual dispute regarding his Florida counsel's advice regarding his guilty plea. We disagree. To be entitled to a reference hearing, a petitioner "must demonstrate that he has competent, admissible evidence to establish the facts that entitle him to relief." *Rice*, 118 Wn.2d at 886. To be entitled to relief from his first degree unlawful possession of a firearm conviction, Horton must identify evidence that his Washington trial counsel performed deficiently by failing to

14

challenge the constitutionality of his predicate offense. A factual dispute regarding his Florida

counsel's advice when pleading guilty to the predicate offense of armed robbery has no bearing

on the correct inquiry unless Horton raised this issue with his Washington counsel. Because

Horton has not identified any evidence showing that his trial counsel was aware of these

circumstances, he fails to demonstrate that he is entitled to relief or to a reference hearing on this

claim.

B.      Appellate Counsel

Finally, Horton contends that his appellate counsel was ineffective for failing to assign

error to the trial court's first degree murder to-convict instruction. To prevail on his claim of

ineffective assistance of appellate counsel, Horton must demonstrate that the legal issue appellate

counsel failed to raise had merit and that he was actually prejudiced by appellate counsel's

failure to raise the meritorious issue. *In re Pers. Restraint of Dalluge*, 152 Wn.2d 772, 787, 100

P.3d 279 (2004).

Horton's ineffective assistance of appellate counsel claim relies on his argument that the

first degree murder to-convict jury instruction was required to list the elements of the alleged

sentence enhancements. Because, as addressed above, this argument lacks merit, Horton fails to

demonstrate that his appellate counsel was ineffective.

CONCLUSION

Accordingly, we deny Horton's petition.

A majority of the panel having determined that this opinion will not be printed in the

No. 51440-1-II

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

Glasgow, J.

We concur:

Worswick, J.

Maxa, C.J.

16