IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 31222-4-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DOUGLAS EARL MEYER, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, C.J. — Douglas Meyer appeals his conviction of felony failure to register as a sex offender. He does not dispute that he failed to register as a sex offender for many years following his conviction of second degree rape. He argues instead that the rape conviction—the predicate for the failure to register charge—was unconstitutional, because he received ineffective assistance of counsel at trial. He also contends that a recantation by one of the State's witnesses at the rape trial raises an issue as to the constitutional validity of his conviction. Mr. Meyer moved for dismissal of the failure to register charge on account of these alleged infirmities in his predicate conviction and argues on appeal that the trial court erred when it denied his motion.

Because Mr. Meyer failed to present a colorable fact-specific argument that his predicate conviction was constitutionally invalid, the trial court properly denied his motion to dismiss. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

In 1992, a Grant County court found Mr. Meyer guilty of rape in the second degree following a bench trial, and sentenced him to 72 months' imprisonment. His conviction was affirmed on appeal and a personal restraint petition was later denied. He was released from prison in June 2000 and moved to the state of Idaho. He was supervised by the Washington State Department of Corrections until 2002.

Mr. Meyer then returned to Washington and moved to Benton County, where he neglected to register as a sex offender as required. He lived in Benton County for approximately seven years without registering. The fact that he was living, unregistered, at an address in Kennewick was discovered when the Benton County sheriff's department followed up on an inquiry from a Grant County sex offender registration detective. A Benton County detective spoke with Mr. Meyer, telling him that he needed to come into the sheriff's office to register immediately. When he did not, the detective traveled to Mr. Meyer's home and placed him under arrest. Following his arrest, Mr. Meyer completed his registration requirements.

2

Mr. Meyer was charged shortly thereafter with felony failure to register under former RCW 9A.44.130(11)(a) (2006).[1] He filed a CrR 8.3(c) motion to dismiss the charge on the basis that the underlying rape conviction was constitutionally invalid.

Mr. Meyer offered three sworn or unsworn statements in support of his CrR 8.3 motion. A brief statement of the allegations made at his 1992 trial for second degree rape will provide a context. Mr. Meyer was convicted of the second degree rape of TR, the 16-year-old daughter of his former girl friend. TR alleged that one night in February 1992, Mr. Meyer arrived at her home in Coulee, Washington between 1:00 and 2:00 in the morning and asked to be let in to get some personal property. She claims that after she let him in, Mr. Meyer held her down on her bed and penetrated her vagina with his fingers and briefly with his penis. Mr. Meyer denied TR's allegations and denied being in Coulee, Washington that night. At the time, he was living in Lewiston, Idaho.

The first affidavit offered by Mr. Meyer in support of his motion to dismiss the charge of failing to register as a sex offender was an affidavit of his defense lawyer in the

---

[1] Former RCW 9A.44.130(11)(a) provided:
A person who knowingly fails to comply with any of the requirements of this section is guilty of a class C felony if the crime for which the individual was convicted was a felony sex offense as defined in subsection (10)(a) of this section or a federal or out-of-state conviction for an offense that under the laws of this state would be a felony sex offense as defined in subsection (10)(a) of this section.

3

No. 31222-4-III
*State v. Meyer*

1992 trial, Richard C. Fitterer. The affidavit had been executed in January 1995.

Relevant here, Mr. Fitterer testified:

> There was a discussion with John Knodell, the Prosecutor, about having both Mr. Meyer and [TR] take a lie detector test, as we both detected serious time and fact discrepancies. Mr. Meyer, at my suggestion, was given a lie detector in Idaho, which he passed, Mr. Meyer then came to Grant County, where the investigator said he was not able to get a valid "sample." I know of no test given to [TR].

Clerk's Papers (CP) at 161.

A second piece of evidence offered by Mr. Meyer was a transcription of an interview of Mela Green. Mela Green was the daughter of Heidi Meyer. Ms. Green, Ms. Meyer, another daughter of Ms. Meyer's, and Rex Meyer, lived on the main floor of the Lewiston house in which Douglas Meyer lived in the basement. Ms. Green testified on behalf of the State at Mr. Meyer's 1992 trial, evidently to assist the State in challenging Mr. Meyer's claim that he had been at his Lewiston home the entire night and morning of the alleged rape.

According to the transcription of Ms. Green's unsworn recorded interview, which was taped in May 1997, Ms. Green stated that she had been under "[a lot] of pressure" at the time of the rape trial. CP at 165. The transcript of her interview includes the following questions and answers (errors are in the original):

> JP [Jan Pfundheller, a private investigator]- Ok, do you remember when this case when to trial in 1992 I believe?
> MG [Mela Green]- Ya.
> JP-    Uh, do you remember what your testimony was?

4

MG- Yes, I was under allot of pressure and I though I said I wasn't sure if his car was or was not there that night.

JP- Ok

MG- It's what I remember what I thought I said.

JP- When you tell me Mela that you were under allot of pressure can you remember where you felt that pressure came from?

MG- Yes, from being threatened from Rex and his brother and from being kicked out of the house.

JP- Ok, did you feel, did you ever feel threatened, not threatened, I'm sorry I'm using the wrong word. Did you ever feel pressured by the Prosecutor?

MG- Well ya, I didn't understand what they were saying.

JP- Ok

MG- It was hard to comprehend what the questions he was asking me because I didn't understand them.

JP- Ok, so Mela if that were to go to trial today instead of sitting here at your kitchen table, would your testimony be that you don't recall seeing that car that night at all?

MG- Yes.

JP- Could that car, in your opinion Mela, could that car have been at that house after midnight when you arrived home?

MG- It could have.

CP at 165-66.

The third piece of evidence offered by Mr. Meyer was an unsworn statement of what an investigator had been told by Jerry Kytonen of Clarkston, Washington. Mr. Kytonen was an acquaintance of Heidi Meyer and Mela Green. According to the statement, Mr. Kytonen had driven Ms. Meyer and Ms. Green to Ephrata to testify at Doug Meyer's 1992 trial. The statement indicated that Heidi Meyer had told Mr. Kytonen "numerous times . . . that she hated Doug Meyer's guts and would 'get him.'" CP at 162. According to the statement, Heidi Meyer asked Mr. Kytonen to testify that he

drove by the Meyer home early on the morning of the alleged rape and that Doug

Meyer's car was not there, but Mr. Kytonen refused. The statement also indicated that

Mr. Kytonen had, "on a number of occasions" heard Heidi Meyer telling Mela Green

what she needed to testify to when she went to court, and

> Heidi[ ] wanted to make sure that Mela said that the car was not there. He
> stated that Heidi told Mela that "you have to say it was gone or we won't
> get Doug." Jerry stated that Mela would say that she wasn't sure if the car
> was gone and that she didn't remember.

*Id.*

The State responded to Mr. Meyer's motion to dismiss first, by challenging his

right as a legal matter to attack the 1992 judgment and sentence; and second, on the basis

that his evidence was insufficient. It argued that Mr. Fitterer's affidavit did not establish

the existence of an agreement that would have permitted introduction of polygraph

evidence at trial and the unsworn interview of Ms. Green did not amount to a recantation.

Having considered Mr. Meyer's evidence, the trial court denied his motion to

dismiss. It later entered two conclusions of law in support:

> 1.    The defendant failed to raise a colorable claim regarding the
>        unconstitutionality of the predicate offense and therefore the
>        predicate offense is constitutionally valid.
> 2.    Based upon a review of the uncontested facts, a rational trier of fact
>        could find the essential elements of Failure to Register as a Sex
>        Offender, RCW 9A.44.130(11)(a), beyond a reasonable doubt.

CP at 206-07. Mr. Meyer's request for interlocutory appeal was denied.

6

Mr. Meyer was convicted of felony failure to register following a stipulated facts trial in which he preserved the issues raised by his motion to dismiss. He was sentenced to 21 days' confinement with credit for 21 days served. He appeals.

ANALYSIS

The crime of failing to register provided by former RCW 9A.44.130(11)(a) requires that the offender has a prior, constitutionally valid, sexual offense conviction. The existence of a constitutionally valid prior conviction is an essential element of the offense, which the State must prove beyond a reasonable doubt. *Cf. State v. Swindell*, 93 Wn.2d 192, 196-97, 607 P.2d 852 (1980) (predicate conviction as an essential element of felon in possession of a firearm). If a defendant challenges the constitutionality of a predicate conviction, it is not considered an attempt to invalidate the prior judgment and sentence, as in the case in a direct appeal or personal restraint petition. "'Rather, [such a] defendant seeks to foreclose the *prior* conviction's *present* use to establish an essential element.'" *State v. Summers*, 120 Wn.2d 801, 810, 846 P.2d 490 (1993) (quoting *Swindell*, 93 Wn.2d at 196).

A defendant who contends that a predicate conviction relied upon by the State is constitutionally invalid bears an initial burden of offering "a colorable, fact-specific argument supporting the claim of constitutional error in the prior conviction." *Id.* at 812. Once this showing is made, the burden shifts to the State to prove beyond a reasonable

7

doubt that the predicate conviction is constitutionally sound. *Id.* The State's burden arises only after the defendant has made an initial showing. *Id.*

Mr. Meyer assigns error to both of the trial court's conclusions of law entered in denying his motion to dismiss. He argues that individually or collectively, his evidence of ineffective assistance of counsel and recantation by a witness met his initial burden of presenting a colorable, fact-specific argument that the predicate conviction was constitutionally invalid. We review challenges to conclusions of law de novo. *State v. Armenta*, 134 Wn.2d 1, 9, 948 P.2d 1280 (1997).

### *Ineffective assistance of counsel*

Mr. Meyer contends that the lawyer who defended him at his 1992 trial provided ineffective assistance because he failed to reduce to writing an oral agreement by the prosecutor to admit polygraph evidence. Evidence of the results of a polygraph test is inadmissible absent the written stipulation of both parties. *See State v. Renfro*, 96 Wn.2d 902, 905, 639 P.2d 737 (1982); *State v. Sutherland*, 94 Wn.2d 527, 529, 617 P.2d 1010 (1980). Mr. Meyer submitted to polygraph testing. His experts would have testified that the results of his polygraph examination indicated that he was being truthful in denying he had raped TR.[2] He argues that he was prejudiced because the lack of any stipulation by the prosecutor prevented him from offering the polygraph evidence at trial.

---

[2] Mr. Meyer took two polygraph examinations. One examiner found that Mr. Meyer was being truthful when he stated he had not committed the rape. The other

8

To prevail on an ineffective assistance of counsel claim, a defendant must show that defense counsel's deficient performance prejudiced him. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Counsel's performance is deficient when it falls below an objective standard of reasonableness. *State v. Stenson*, 132 Wn.2d 668, 705, 940 P.2d 1239 (1997). To show prejudice, Mr. Meyer must establish that "there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different." *McFarland*, 127 Wn.2d at 335.

The facts Mr. Meyer presents in support of his contention that he received deficient and prejudicial legal representation do not present a colorable claim of ineffective assistance. At most, Mr. Fitterer recounts a discussion with the prosecutor about obtaining polygraph examinations of both Mr. Meyer and TR. He does not say that an agreement was reached. There is no evidence that TR was willing to submit to polygraph testing even if it were true that the prosecutor and Mr. Meyer's lawyer thought that testing her and Mr. Meyer would help resolve their "time and fact discrepancies." CP at 161. Mr. Meyer's showing that polygraph testing was discussed, without more, fails to demonstrate viable issues of either deficient representation or prejudice.

---

examiner found the first test results to be inconclusive and then conducted his own test in which he concluded that Mr. Meyer was being deceptive. The test results were sent to a third party who found that Mr. Meyer was being truthful in his answers.

9

*Recantation*

Alternatively, Mr. Meyer argues that the predicate conviction was based on the false testimony of a later-recanting witness. He contends that "[t]his evidence discovered after trial could change its results if a new trial were granted and is material, not merely cumulative or impeaching, as the recantation supports Mr. Meyer's alibi defense." Br. of Appellant at 8.

The admissible bottom line of Ms. Green's 1997 unsworn interview is that at that time, her testimony would have been that she "[didn't] recall seeing that car that night at all." CP at 165. We agree with the State that if that can even be said to be a recantation, it is not much of a recantation.

But our rejection of this argument by Mr. Meyer is more fundamental. Mr. Meyer's brief fails to explain how newly acquired evidence implicates the *constitutionality* of the predicate conviction. *See* RAP 10.3(a)(6). Newly acquired evidence can support entitlement to a new trial, including through a collateral attack. *See* CrR 7.5(a)(3) (newly discovered evidence material for the defendant as basis for a new trial); RCW 10.73.100(1) (newly discovered evidence as a basis for postconviction relief is not subject to one-year time limit). But if the defendant does not seek the remedy of a new trial, the conviction stands.

It is only when a defendant presents colorable, fact-specific argument supporting *constitutional error* in a predicate conviction that the State is required to prove beyond a

10

reasonable doubt that the conviction reflected in a judgment and sentence is constitutionally valid. No constitutional infirmity was suggested here. It was sufficient for the State to offer a certified copy of the judgment and sentence.

Affirmed.

A majority of the panel has determined that this opinion will not be printed in the Washington Appellate Reports but it will be filed for public record pursuant to RCW 2.06.040.

Siddoway, C.J.

WE CONCUR:

Brown, J.

Korsmo, J.